148 N.J. Super. 419 (1977)
372 A.2d 1124
ESTATE OF LOUIS PENN, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
AMALGAMATED GENERAL AGENCIES AND RICHARD-LEWIS AGENCY, DEFENDANTS, AND EMPIRE MUTUAL INSURANCE COMPANY, DEFENDANT-RESPONDENT AND CROSS-RESPONDENT, AND WESTERN WORLD INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 11, 1977.
Decided March 14, 1977.
*420 Before Judges LORA, CRANE and MICHELS.
Mr. Marc L. Dembling argued the cause for appellant Western World Insurance Company (Messrs. Lieb, Teich & Berlin, attorneys; Mr. Jerome S. Lieb, of counsel and on the brief).
Mr. Martin N. Piper argued the cause for respondent and cross-appellant Estate of Louis Penn (Messrs. Brenman & Piper, attorneys).
Mr. Joseph S. Montalbano argued the cause for respondent and cross-respondent Empire Mutual Insurance Company.
The opinion of the court was delivered by MICHELS, J.A.D.
The principal question raised by this appeal is whether a primary carrier owes to an excess carrier the same positive duty to take the initiative and attempt to negotiate a settlement within the policy coverage that it owes to its assured. The trial judge on cross-motions for summary judgment, held that the fiduciary duty imposed upon a carrier with respect to its assured by Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 496 (1974), did not apply as between primary and excess carriers, and that the excess carrier was solely liable for all sums recovered against its assured in excess of the limits of coverage provided by the primary carrier.
*421 This litigation arose as the result of an automobile accident in which a taxicab owned by plaintiff estate of Louis Penn (Penn) struck the rear of another automobile while stopped for a red light. Penn had obtained automobile liability insurance covering the taxicab through defendant Amalgamated General Agencies. The primary coverage was issued by defendant Empire Mutual Insurance Company with limits of $10,000 per person and $20,000 per accident. The excess coverage was issued by defendant Western World Insurance Company with excess limits above the $10,000-$20,000 to $90,000 per person and $280,000 per accident.
Immediately following the accident Penn notified Empire Mutual of the accident and sent it a written report thereof. Empire Mutual sent a copy of the report to Amalgamated which, in turn, sent a copy to Western World. Thereafter Freddie Howard, the owner and operator of the other automobile involved in the accident and his three passengers, Charles Jones, William Jones and Emmet Jones, instituted suit against Penn to recover for the personal injuries they sustained in the accident. Empire Mutual undertook the defense of the action although apparently it did not notify Western World that suit had been instituted.
Settlement negotiations were undertaken prior to trial and the four claimants finally agreed to settle their claims for the aggregate sum of $10,875, which was well within the policy limits of Empire Mutual's primary coverage of $20,000. Howard agreed to accept $1,375, William Jones $1,500, Emmet Jones $5,500 and Charles Jones $2,500. Empire Mutual refused to pay the aggregate amount demanded but offered to settle all of the claims for a total of $9,875. It offered to pay Howard and William Jones the amounts they demanded but were only willing to pay $5,000 to Emmet and $2,000 to Charles Jones. When settlement fell through because all the claims could not be settled as a package, the case was tried to a jury which returned verdicts in favor of all of the claimants, which with interest totalled $29,827.20. Howard was awarded $1,918.74, William Jones *422 $2,001.43, Emmet Jones $7,875.25 and Charles Jones $18,031.78. Empire Mutual's motions for new trial and remittitur were denied.
Empire Mutual then filed a notice of appeal and notified Western World for the first time that judgments had been recovered in excess of the primary limits and demanded that Western World contribute to the appeal bond. Western World refused, claiming that Empire Mutual as the primary carrier had violated its duty of good faith by failing to settle the claims within its policy limits. As a result of Western World's refusal to contribute to the appeal bond and Empire Mutual's failure to post a bond in excess of the amount of its $20,000 coverage, Penn was forced to deposit with the clerk of the court $9,827.20 to avoid execution upon the judgments by the claimants. The judgments were affirmed on appeal by this court and were paid in full, $6,353.28 of the total payment coming from the funds deposited by Penn with the clerk of the court. The balance of the funds deposited was returned to Penn.
Penn thereupon instituted this action to recover the money it had paid the four claimants over and above the sums paid by Empire Mutual, as well as counsel fees and costs. The complaint against Amalgamated and defendant Richard-Lewis Agency, a cobroker, was dismissed on their motions for summary judgment and no appeal was taken therefrom. Thereafter, on cross-motions for summary judgment by the remaining parties, the trial judge held that since Western World was the excess carrier, it was solely liable for the verdicts in excess of the primary coverage provided by Empire Mutual. The judge also held that, even though its ruling on the law was dispositive of the case, there was no indication of any bad faith on the part of Empire Mutual in failing to settle the claims within its policy limits. Summary judgment was entered in favor of Penn against Western World for the amount of moneys Penn had paid to the claimants, together with counsel fees, costs and interest, and Penn's *423 complaint against Empire Mutual was dismissed. This appeal followed.
We are convinced that the trial judge erred in holding that the principles enunciated in Rova Farms do not apply as between primary and excess carriers. We are of the view that Western World, as the excess carrier, has precisely the same status as the assured Penn for purposes of this action. This is clearly consistent with the status accorded the plaintiff excess carrier in Fireman's Fund Ins. Co. v. Security Ins. Co. of Hartford, 72 N.J. 63, 68 (1976), as well as the general rule under which the excess carrier is subrogated to the assured's rights against the primary carrier. See United States Fidelity & Guar. Co. v. Tri-State Ins. Co., 285 F.2d 579 (10 Cir.1960); St. Paul-Mercury Indemnity Co. v. Martin, 190 F.2d 455, 457-458 (10 Cir.1951); American Fidelity & Cas. Co. v. All American Bus Lines, 179 F.2d 7, 11 (10 Cir.1949), 190 F.2d 234, 238 (10 Cir.1951), cert. den. 342 U.S. 851, 72 S.Ct. 79, 96 L.Ed. 642 (1951); Transport Ins. Co. v. Michigan Mut. Liab. Ins. Co., 340 F. Supp. 670 (E.D. Mich. 1972); Home Ins. Co. v. Royal Indem. Co., 68 Misc.2d 737, 327 N.Y.S.2d 745 (Sup. Ct. 1972). The reasons underlying this rule are well expressed in Peter v. Travelers Ins. Co., 375 F. Supp. 1347 (D.C. Cal. 1974), and are worthy of repeating:
Moreover, strong equitable and economic considerations also compel this result in the present case. The primary carrier's duty arises by way of a contract with the insured, and this duty is not reduced merely because of another contract between the insured and its excess insurer.
An insurance company's duty to act in good faith in settling claims within its policy limits is well established and is reflected in its premiums. That an excess insurer may recover from the primary for a breach of duty does not increase the duty or liability of the primary. Under the doctrine of equitable subrogation, the duty owed an excess insurer is identical to that owed to the insured. The excess will not be able to force the primary into accepting any settlement which his duty to the insured would not require accepting. St. Paul-Mercury Indemnity Co. v. Martin, supra, at 457. In considering whether it will settle a claim, the primary insurer may consider its own interests, but it must equally consider the interests of the insured, *424 which become the interests of the excess insurer by subrogation.
While the interests of the primary insurer are, for the most part, unaffected by the existence of excess coverage, the interests of the excess carrier are very much affected by the actions of the primary. If the primary carrier undertakes the representation of the insured, then it has the sole right to negotiate settlements. If the primary carrier is relieved of its duty to accept reasonable offers by the existence of excess insurance, it would put an additional financial liability on the excess carrier which would be reflected in increased premiums. It would also have the effect of reducing the incentive of a primary insurer to settle when the settlement offer is near or over its policy limits. This is contrary to the interests of the public and the insured in obtaining prompt and just settlement of claims. See generally Bloom, "Recovery Against Primary Insurer by Excess Carrier for Bad Faith or Negligent Failure to Settle," 36 Ins. Counsel J. 235 (1969). [at 1350-1351]
Accordingly, we hold that the primary carrier owes to the excess carrier the same positive duty to take the initiative an attempt to negotiate a settlement within its policy limit that it owes to its assured. To the extent that the Law Division expressed a contrary conclusion in Western World Ins. Co. v. Allstate Ins. Co., 140 N.J. Super. 338 (1976), we disagree with that holding.
We are also convinced that the trial judge erred in making the alternative finding that there was no indication of any bad faith in this case. Entirely apart from the fact that the judge failed to follow the principles enunciated by Rova Farms, the evidence presented on the stipulation was insufficient to make such a finding. The state of the record was such that the judge should have required a plenary hearing before he determined whether the factors, including bad faith, required to be proven in a case of this kind had or had not been established. See Fireman's Fund Ins. Co. v. Security Ins. Co. of Hartford, supra, 72 N.J. at 69-71; Rova Farms Resort v. Investors Ins. Co., supra, 65 N.J. at 496-498; Bowers v. Camden Fire Ins. Ass'n., 51 N.J. 62, 71-72 (1968), and Yeomans v. Allstate Ins. Co., 130 N.J. Super. 48, 51-55 (App. Div. 1974).
*425 Accordingly, the judgment of the Law Division is reversed and the matter is remanded for plenary hearing consistent with the views expressed in this opinion. We do not retain jurisdiction.