293 N.J. Super. 567 (1995)
681 A.2d 1241
AMERICAN CENTENNIAL INSURANCE COMPANY, PLAINTIFF,
v.
WARNER-LAMBERT COMPANY, CONTINENTAL INSURANCE COMPANY AND UNDERWRITERS ADJUSTING COMPANY AND JOHN DOE, DEFENDANTS.
Superior Court of New Jersey, Law Division Morris County.
Decided July 21, 1995.
*570 Riker, Danzig, Scherer, Hyland & Perretti for plaintiff (Shawn L. Kelly and Susan Morgan Foster, attorneys).
Hoagland, Longo, Moran, Dunst & Doukas for defendants (James B. Moran and Douglas M. Fasciale, attorneys).
FRIEND, J.S.C.
This matter is before the court on defendants' motion for summary judgment, as well as plaintiffs cross motion for summary judgment. At issue is the liability of a primary insurance carrier when it fails to give adequate notice to the excess carrier of a pending claim against an insured and then fails to settle the case within its insured's policy limits.
American Centennial Insurance Company, (ACIC), the excess insurer, commenced this declaratory judgment action against its insured, Warner-Lambert Company (Warner-Lambert), the primary insurance carrier, Continental Insurance Company (Continental), and Continental's claim handling subsidiary, Underwriters Adjusting Company. ACIC is seeking a determination of its rights and obligations in connection with an excess insurance policy which it issued to Warner-Lambert for the 1979-1980 policy period. ACIC is also seeking an adjudication that it is not responsible or liable to expend any sums or pay any damages under its excess insurance policy as a result of a judgment rendered against Parke-Davis Company, a subsidiary of Warner-Lambert, *571 in connection with the underlying product liability lawsuit. In addition, since ACIC has already made a conditional payment in connection with the underlying products liability action, plaintiff also seeks the refund of that payment, with interest.
For the 1979 policy year, Warner-Lambert insured itself against certain liability claims through a multi-layered program of insurance. Continental provided the primary layer of coverage and this layer of insurance included a combined single limit of liability in the amount of $3 million. ACIC insured $4 million of the $5 million second layer of insurance coverage, thus providing the excess coverage.
Unknown to ACIC, Warner Lambert and Continental had entered into an agreement supplementing the insurance policy whereby Continental relinquished to Warner-Lambert all authority to negotiate and settle product claims. Also pursuant to this agreement, Warner-Lambert fully reimbursed Continental for all costs and expenses paid in connection with product liability claims up to the limits of the Continental policy.
Because of this agreement, it was Warner-Lambert and not Continental that directed the settlement negotiations and litigation of the underlying products liability suit in this matter. This underlying lawsuit involved litigation commenced against Parke-Davis & Company (Parke-Davis), a subsidiary of Warner-Lambert. The matter, entitled Donna Ricci and Thomas Ricci, her husband, v. Parke-Davis & Co., et al., was commenced in April, 1982 in the Circuit Court of 17th Judicial Circuit, Broward County, Florida, and involved a personal injury action brought by Mr. and Mrs. Ricci against Parke-Davis for the negligent manufacturing and distribution of an oral contraceptive. Mrs. Ricci allegedly suffered severe personal injuries as a result of ingesting oral contraceptives manufactured by Parke-Davis.
Following the commencement of the lawsuit in April of 1982, Warner-Lambert provided ACIC with a standardized form indicating that the Riccis had made a claim against Warner-Lambert. This was the only notice provided to ACIC throughout the seven *572 and one half years of litigation and settlement discussions that followed the filing of the complaint. In actuality, Continental never engaged in any settlement negotiations with the Riccis and Warner-Lambert engaged in few negotiations. The Ricci's attorney testified at deposition that he continually attempted to settle the matter but Warner-Lambert was not receptive to settlement talks. ACIC was never apprised of the settlement demands made by the Riccis even though some put the excess policy at risk. ACIC was also never notified when, in 1986, Continental determined that the primary policy limits were exhausted on an incurred cost basis, thereby placing ACIC directly at risk.
In July 1989, a verdict was rendered in favor of the Riccis and against Parke-Davis in the amount of $2,165,000. On November 3, 1989, ACIC was advised that its policy was at risk for the full amount of the judgment and then, for the first time, ACIC was notified of the litigation surrounding the Ricci matter. ACIC associated in the prosecution of an appeal of the verdict which was unsuccessful. ACIC then issued a Reservation of Rights letter to Warner-Lambert and paid $539,121.92 (incorrectly set forth as $534,861.60 in the parties' briefs) in partial satisfaction of the judgment.
Prior to the summary judgment motion at issue, ACIC settled its claims against Warner-Lambert with that defendant. Thus, Continental and its affiliate, Underwriters Adjusting Company, are the remaining defendants in this lawsuit. Pursuant to the settlement agreement, ACIC paid additional sums to Warner-Lambert. This settlement agreement raises issues pertinent to the summary judgment motion of whether the settlement agreement resolves ACIC's claims against Continental and whether ACIC suffered any damages by way of Continental's conduct.
Continental argues that, pursuant to a provision of the settlement agreement, Warner-Lambert is to indemnify ACIC for any damages ACIC may suffer as a result of the handling of the Ricci claim. Thus, ACIC cannot look to Continental to recover any *573 alleged damages. The relevant portion of that provision relied upon by Continental reads[1]:
INSURED hereby agrees to indemnify and defend each of the INSURER RELEASED PERSONS, hold each of them harmless from and against, and pay on their behalf the full amount of any judgment, payment, award, loss, claim, damage, liability or expense incurred (including, but not limited to, fees and expenses incurred in investigating or defending any actions or proceedings and reasonable attorneys' fees) by any of them, arising out of, resulting from or in any way connected with the Policies....
Continental incorrectly narrows its focus on this one paragraph, instead of reading the agreement in its entirety. A subsequent provision specifically answers the query of whether ACIC is to be indemnified by Warner-Lambert in connection with the handling of the Ricci matter. That relevant provision states:
Nothing in this RELEASE shall affect any rights INSURER may have with respect to any of INSURER's reinsurers. INSURER, however, releases and waives any and all claims, and shall not seek reimbursement for the Settlement Sum or any part thereof from the INSURED or any other insurer of the INSURED, other than any claims which INSURER has or may have against Continental Insurance Company in the Morris County Litigation. (emphasis added)
Notwithstanding the indemnification language, the parties have specifically stated in the settlement agreement that ACIC has reserved its right to recover from Continental the amounts it paid under the terms of the settlement. Although one agreement provision may indicate that Warner-Lambert is to indemnify ACIC, the settlement agreement must be read in its entirety. After a comprehensive reading, it is clear that ACIC and Warner-Lambert intended that ACIC would be free to pursue its remedies against Continental. Thus, the settlement agreement does not preclude ACIC from continuing its suit against Continental.
Continental further argues that ACIC is no longer damaged due to the settlement agreement. Continental contends that the amount ACIC paid to Warner-Lambert pursuant to the settlement agreement was offset by the previous payment of $539,121.92 *574 which was used to satisfy the Ricci judgment. However, the court finds that because ACIC and Warner-Lambert did not specifically refer to the previous payment, they did not contemplate that those sums previously paid would be consideration for the settlement. The court further finds that even if the previous payment was considered by the parties, it was for the purpose of excluding the amount from consideration.
From the settlement agreement it is apparent that ACIC and Warner-Lambert specifically contemplated that ACIC would look to Continental to recover its damages, as the agreement expressly provides that ACIC may continue its claims against Continental in the Morris County litigation. Therefore, the settlement agreement does not compensate ACIC for the damages it suffered as a result of Continental's conduct.
Now that it has been established that ACIC has the right to maintain its suit against Continental, Continental's liability must be addressed. Continental argues that it cannot be held liable for any wrongdoing, because ACIC was not prejudiced as a result of the handling of the Ricci claim. In support of its argument, Continental relies upon Cooper v. Government Employees Ins. Co., 51 N.J. 86, 94, 237 A.2d 870 (1968), where the court held that an insurer cannot escape payment of a claim unless improper notice is given by the insured and there is likelihood the insurer has suffered appreciable prejudice. See also Molyneaux v. Molyneaux, et al., 230 N.J. Super. 169, 177-78, 553 A.2d 49 (App.Div. 1989); Costagliola v. Lawyers Title Ins., 234 N.J. Super. 400, 406-07, 560 A.2d 1285 (Ch.Div. 1988). The determination of whether appreciable prejudice exists is made in a two-part inquiry: (1) whether substantial rights have been irretrievably lost and (2) the likelihood of success of the insurer in defending against the victim's claim. Morales v. National Grange Mut. Ins. Co., 176 N.J. Super. 347, 423 A.2d 325 (Law Div. 1980). Continental claims that ACIC was provided sufficient notice of the Ricci claim, which ACIC ignored. Continental then argues ACIC has not suffered appreciable prejudice as a result of the handling of the Ricci claim, *575 because ACIC cannot prove that it has irretrievably lost substantial rights and because Parke-Davis pursued a meritorious defense.
However, the court finds that Cooper and its progeny are not dispositive of the issues at hand. Cooper and its progeny do not address a situation where notice must be given to an excess carrier. Instead, these cases address situations where the insured is giving notice to a single insurer and the prejudice that results to such an insurer. What constitutes proper notice given to a single insurance carrier may differ from what constitutes proper notice given to an excess carrier. When a primary carrier/excess carrier relationship is involved, proper notice entails the primary carrier, not the insured, advising the excess carrier of the existence of the claim. To ensure proper notice is given, the primary carrier must also notify the excess carrier on an ongoing basis of any settlement discussions or pending litigation. In this matter, ACIC was not provided with proper notice because the insured, not the primary carrier, gave inadequate notice of a pending claim. Adequate notice cannot constitute a single mailing of a form letter. Moreover, not only did Continental fail to give initial notice of the pendency of the Ricci claim, but Continental also failed to advise ACIC of any settlement talks or litigation moves.[2]
Continental's liability then grows out of the unique relationship between a primary and excess carrier. The primary insurer has certain duties and obligations that it owes to the *576 excess insurer as a result of the distinctive relationship between the two carriers. The unique relationship results because the excess insurer relies upon the primary carrier to act in good faith in processing claims. This includes reliance upon a primary carrier to act reasonably in: (1) discharging its claims handling obligations; (2) discharging its defense obligations; (3) properly disclosing and apprising the excess carrier of events which are likely to effect that carrier's coverage; and (4) safeguarding the rights and interests of the excess carrier by not placing the primary carrier's own interests above that of the excess insurer. The actions of the primary carrier can affect the rights of the excess carrier. This duty then is protected by industry custom and the common law.
The insurance industry has promulgated an industry contract known as the "The Guiding Principles for Primary and Excess Insurance Companies." The Guiding Principles offer a uniform set of rules to govern the relationships between primary and excess insurers, and both Continental and ACIC are signatories to the Principles. The Principles provide
It is implicit in these guiding principles that the primary insurer in its dealings with an excess insurer voluntarily adopt those standards of conduct which the law imposes upon the primary insurer in its dealings with its insured.
The Guiding Principles provide nine different obligations which define the relationship between the primary and excess carriers. The following five are relevant to these proceedings:
(1) The primary insurer must discharge its duty of investigating promptly and diligently even those cases in which it is apparent that its policy limit may be consumed.
(2) Liability must be assessed on the basis of all the relevant facts which a diligent investigation can develop and in the light of applicable legal principles. The assessment of liability must be reviewed periodically throughout the life of the claim.
(3) Evaluation must be realistic and without regard to the policy limit.
(4) When from evaluation of all aspects of a claim, settlement is indicated, the primary insurer must proceed promptly to attempt a settlement, up to its policy limit if necessary, negotiating seriously and with an open mind.
(5) If at any time, it should reasonably appear that the insured may be exposed beyond the primary limit, the primary insurer shall give prompt written notice to *577 the excess insurer, when known, stating the results of investigation and negotiation, and giving any other information deemed relevant to a determination of the total exposure, and inviting the excess insurer to participate in a common effort to dispose of the claim.
The Guiding Principles can be used to establish the standard of care which a primary insurer must use when settling a claim where an excess insurer may also ultimately be responsible for coverage. See Pasker v. Harleysville Mutual Ins. Co., 192 N.J. Super. 133, 139-40, 469 A.2d 41 (App.Div. 1983) (holding the court should consider the insurance industry promulgated Guiding Principles when fashioning a remedy for a situation described in the Principles). Here, Continental acted in direct contravention to the above Guiding Principles, and violated the standard of care established by the insurance industry.
First, Continental violated Principles numbered one, two, three, and four when it delegated its duties to its insured. Continental failed to investigate the Ricci claim and assess liability. Furthermore, Continental failed to settle the Ricci matter, even though Ms. Ricci's counsel has indicated that the Riccis, in order to settle their claim against Parke-Davis, were willing to accept much less than the judgment amount. The Principles intend for the insurer, not the insured, to maintain responsibility for investigating, settling and/or litigating claims. When a primary carrier fails to carry out its responsibilities, an excess carrier is placed at extensive risk.
Second, Continental violated Principle number five when it disregarded its obligation to notify ACIC of the pending litigation and the possible exposure ACIC could incur. Instead, Continental allowed its insured, Warner-Lambert, to provide inadequate notice to ACIC. The only notice ACIC received was a standard form letter from Warner-Lambert stating that a complaint had been filed in the Ricci matter. No other communications were forthcoming from Warner-Lambert. Continental never advised ACIC of any investigation into the claim nor any settlement negotiations. Continental never invited ACIC to participate in *578 attempting to dispose of the claim. Continental had no contact with ACIC regarding the Ricci matter. Instead, unknown to ACIC, Continental allowed its insured, Warner-Lambert, to direct the litigation and settlement of the Ricci matter. Continental, in direct contravention of the Guiding Principles, gave up all control of handling this claim made against its insured. Thus, Continental, who had the obligation to comply with the Guiding Principles, failed to comply, and violated the standard of care established by the insurance industry.
The common law also requires holding Continental liable for failing to act in good faith in settling and litigating the Ricci claim. Basic principles of tort law require imposing a duty of good faith on the primary carrier. Under New Jersey law, the question of whether a duty of care exists "is largely a question of fairness or policy," and it is for the court to decide if the duty exists. Strachan v. John F. Kennedy Memorial Hosp., 109 N.J. 523, 529, 538 A.2d 346 (1988). "The inquiry involves a weighing of the relationship of the parties, the nature of the risk and the public interest in the proposed solution." Kelly v. Gwinnell, 96 N.J. 538, 544, 476 A.2d 1219 (1984) (quoting Goldberg v. Housing Authority of Newark, 38 N.J. 578, 583, 186 A.2d 291 (1962)).
Fairness and policy require the imposition of a duty of good faith on the primary carrier. The primary is in a knowledgeable position as it has current information of the status of an underlying claim, while the excess carrier relies on the primary carrier to keep it properly apprised of negotiation and litigation. It is a unique relationship between the parties, and it is reasonable for the excess carrier to rely on the primary carrier to act in good faith. The primary carrier should understand the risk involved to the excess carrier if it does not perform its duties in good faith. The excess carrier charges the insured a premium that assumes the primary carrier will act in good faith to settle and litigate claims, thereby decreasing the excess carrier's exposure to risk. When the primary carrier does not perform its duties in good faith, the public suffers, as excess carriers will then charge higher *579 premiums for excess coverage. Therefore, the consideration of the unique relationship between the parties, the risk accruing to the excess carrier, and the public interest in lower premiums, mandates the imposition of a duty of good faith and fair dealing upon the primary carrier.
In Estate of Penn v. Amalgam. General Agency, 148 N.J. Super. 419, 372 A.2d 1124 (App.Div. 1977), the court held that the primary insurer owes the excess insurer the same positive duty to initiate and negotiate settlements within its policy limit that it owes to its insured. In reaching its decision, the court relied upon the rationale of the United States District Court for the District of California in Peter v. Travelers Ins. Co., 375 F. Supp. 1347, 1350-51 (C.D.Cal. 1974), in which the court reasoned as follows:
If the primary carrier is relieved of its duty to accept reasonable offers by the existence of excess insurance, it would put an additional financial liability on the excess carrier which would be reflected in increased premiums. It would also have the effect of reducing the incentive of a primary insurer to settle when the settlement offer is near or over its policy limits. This is contrary to the interests of the public and the insured in obtaining prompt and just settlement of claims.
[Id. at 424, 372 A.2d 1124.]
Therefore, Continental had a duty to attempt to settle the Ricci claim within the policy limits of the primary carrier. However, Continental failed to even attempt to settle, leaving all litigation and negotiation maneuvers to its insured, Warner-Lambert.[3] Because negotiation was not handled properly by Continental, ACIC has been damaged. Had Continental acted in accordance with the Guiding Principles and the common law and ACIC was then required to provide excess coverage, Continental would not have any liabilities in this case. However, Continental breached the standards of care imposed by the insurance industry and the common law. Thus, Continental must be held liable.
*580 As a result of Continental's violation of the standard of care promulgated by the insurance industry and of its breach of its duty to act in good faith, ACIC has been damaged. The measure of those damages is the amount ACIC has paid under the excess policy. Thus, ACIC is to be reimbursed for all monies that it has paid in satisfaction of the judgment in the underlying Ricci matter, plus pre-judgment interest to be calculated in accordance with the Rules of Court.
Defendant's motion for summary judgment is denied and plaintiff's cross-motion for summary judgment is granted.
NOTES
[1] Warner-Lambert is referred to as the INSURED in the settlement agreement, while ACIC is referred to as the INSURER.
[2] In the event Cooper and its progeny are controlling, the court finds that ACIC has suffered appreciable prejudice. ACIC's rights to associate in the defense of the Ricci matter and participate in settlement discussions were irretrievably lost when ACIC was not advised of the litigation until after a judgment was entered. In addition, had ACIC been properly appraised of the Ricci's settlement demands, ACIC could have participated in settlement discussions to protect its own interest. According to Ms. Ricci's attorney it was likely that the Ricci case would have settled had Warner-Lambert actively engaged in settlement discussions. Thus, there was a strong likelihood that ACIC would have found success in the litigation of the Ricci claim, as it is likely the claim could have been settled for an amount that would not put ACIC's policy at risk.
[3] Continental also violated its duty to use good faith in processing the claim by not advising ACIC of the agreement it had with Warner-Lambert, whereby Warner-Lambert would process the claims.