727 A.2d 1050 (1999)
320 N.J. Super. 546
GENERAL ACCIDENT INSURANCE COMPANY, Assignee of Whibco, Inc., Plaintiff-Appellant,
v.
NEW YORK MARINE AND GENERAL INSURANCE COMPANY t/a Mutual Marine Office, Inc., Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted January 5, 1999.
Decided May 4, 1999.
*1051 Murphy & O'Connor, Haddonfield, for plaintiff-appellant (Timothy J. Galanaugh, on the brief).
Chalos & Brown, New York City, for defendant-respondent (Timothy G. Hourican, on the brief).
Before Judges PRESSLER, KLEINER and STEINBERG.
The opinion of the court was delivered by STEINBERG, J.A.D.
This is a dispute between two primary insurance carriers, plaintiff General Accident Insurance Company (General Accident) and defendant New York Marine and General Insurance Company (Mutual Marine), each of whom has issued liability policies covering, for specified risks, Whibco, Inc., and its employee Beiling Loh. Mutual Marine, under a reservation of rights, had defended the insureds from the time of the commencement of the litigation against them. General Accident, although timely noticed of the suit, chose to ignore the litigation until trial, when it negotiated and paid a settlement on their behalf. The issue of first impression raised by this appeal is whether the insurer who ultimately paid the settlement after declining to participate in the litigation has a cause of action against the defending insurer based on its alleged inadequacy in conducting the defense. We hold that under the circumstances of this case no such cause of action lies. We therefore affirm the judgment of the trial court dismissing General Accident's complaint.
On April 6, 1990, Beiling Loh was travelling on Route 55 in Gloucester County. He had left work early that day to attend a college course which was provided as an employee benefit through his employment at Whibco. Although he was permitted to use one of Whibco's vehicles to attend this course, he chose to use his own vehicle. Whibco reimbursed Loh's mileage costs in so using his personal vehicle. On the day of the accident, after attending his course, Loh was driving to Vineland, New Jersey to pick up his daughter. On route he was involved in an accident, striking and killing a bicyclist who was riding on the shoulder of Route 55. The bicyclist, Richard Foster, was thirty-two years old, married, and the father of two children, ages ten and three. Gina Foster his widow, individually and as Administratrix of the Estate of Richard Foster, filed a complaint against Loh and Whibco. She alleged *1052 that Whibco was liable because Loh was acting within the scope of his employment when the accident occurred and she further alleged that Whibco negligently hired Loh as an employee.
Whibco notified its insurance broker of the suit and the broker, in turn, provided notice to defendant Mutual Marine, which provided general liability coverage to Whibco, and to plaintiff General Accident Insurance Company, which provided business automobile liability insurance to Whibco. Mutual Marine filed an answer on behalf of Whibco. Subsequently, house counsel for General Accident contacted Foster's attorney to request an extension of time to file an answer and was informed that an answer had already been filed by Mutual Marine. According to house counsel for General Accident, he contacted the attorney who filed the answer for Mutual Marine and was advised that Mutual Marine had filed an answer for both Whibco and Loh.[1] Although General Accident kept its file open for a time, it ultimately closed the file since it believed that Loh was not acting within the course of his employment at the time of the accident.
Despite its filing of an answer for Whibco, Mutual Marine, by letter dated July 25, 1991, disclaimed coverage based on an exclusion in the policy providing that the insurance did not apply to injuries arising out of the ownership, operation or use of an automobile operated by any person in the course of his employment with the insured. The letter further advised Whibco that any information it had which might affect its disclaimer should be provided immediately. Whibco responded by stating that Loh was running a personal errand when the accident occurred and was not acting within the scope of his employment. Based upon that letter, Mutual Marine withdrew its disclaimer and notified Whibco that it would defend it subject to a reservation of rights. By letter dated January 8, 1992, Mutual Marine reaffirmed its reservation of rights, referred to the applicable exclusion, and suggested that Whibco report the matter to General Accident, its automobile liability insurance carrier.
In August 1993, counsel assigned by Mutual Marine for Whibco unsuccessfully moved for summary judgment on the issue of agency and respondeat superior and unsuccessfully moved for leave to file an interlocutory appeal from that determination. According to General Accident, Mutual Marine never notified it of the filing of the motion, the determination by the motion judge, or its efforts to appeal. Subsequent settlement efforts were unsuccessful and the case was listed for trial for June 1994.
Whibco's policy with Mutual Marine contained a $10,000 self-insured retention (SIR) which required the insured to pay the first $10,000 of adjustment, settlement, and litigation costs incurred for the claim. On March 30, 1994, Mutual Marine wrote Whibco informing it that the $10,000 SIR was nearly exhausted. In that letter Mutual Marine again reasserted its coverage disclaimer and again reaffirmed its reservation of rights. The letter advised, however, that Mutual Marine would continue to defend Whibco provided the parties entered into a non-waiver agreement. The proposed non-waiver agreement would have provided that Mutual Marine would continue to defend Whibco without waiving its coverage position. Whibco refused to sign a non-waiver agreement and suggested to Mutual Marine that it should request a similar non-waiver agreement from General Accident.
On May 25, 1994, approximately two weeks before trial was scheduled to commence, General Accident, which had been informed of the coverage question, advised Whibco by letter that it would "undertake to investigate this matter in order to gather information it needs to formulate an informed decision regarding its obligations, if any, in these matters. This party's position is expressly conditioned upon a reservation of a non-waiver of the rights of General Accident in this matter". On June 2, 1994, General Accident wrote to Whibco and explained that in its opinion it would be in Whibco's best interest to have Mutual Marine continue to protect its interest by either entering into settlement negotiations or defending through trial.
*1053 On June 10, 1994, General Accident wrote to Mutual Marine requesting that both companies attempt to settle the personal injury action and, if settlement is reached, the two companies should attempt to resolve their dispute or submit it to arbitration. Apparently, those efforts were unsuccessful.
On June 13, 1994, the underlying personal injury action was assigned for trial. The trial judge concluded, as a matter of law, that Loh was acting within the scope of his employment at the time the accident occurred. Shortly thereafter General Accident, through counsel, offered its policy limits of $1,000,000, which was accepted by the Foster estate. General Accident obtained an assignment of rights from Whibco and filed suit against Mutual Marine alleging that Mutual Marine was negligent in handling the claim causing General Accident to have to offer its policy limits to Foster. General Accident contended that the negligence of Mutual Marine estops it from denying coverage, and requires Mutual Marine to indemnify General Accident for the amount of the settlement.
We begin our analysis with the observation that summary judgment must be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). In making his decision, the motion judge must view the evidence on the motion in the light most favorable to the non-moving party in order to determine whether it is sufficient to permit a rational fact-finder to resolve the alleged disputed issue in favor of the non-moving party. See Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 540, 666 A.2d 146 (1995). The judge's function is to determine whether there is a genuine issue for trial. Ibid. Although credibility determinations are to be made by a jury rather than the judge, nevertheless, if there exists a single unavoidable resolution of an alleged disputed issue of fact, summary judgment should be granted. Ibid. Thus, when the evidence is so one-sided that one party must prevail as a matter of law, the motion judge should not hesitate to grant summary judgment. Ibid. An appellate court employs the same standard that governs trial courts in reviewing summary judgment determinations. See Prudential Property Ins. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div.1998); Pinkowski v. Township of Montclair, 299 N.J.Super. 557, 566, 691 A.2d 837 (App.Div.1997). We agree with the motion judge that there was no genuine issue as to any material fact, and that the case was appropriate for disposition as a matter of law.
We are first satisfied that General Accident acquired no rights from the assignment to it by Whibco of any rights Whibco may have had against Mutual Marine. Ordinarily, a stranger to an insurance policy has no right to recover the policy proceeds. See Biasi v. Allstate Ins. Co., 104 N.J.Super. 155, 159-60, 249 A.2d 18 (App.Div.), certif. denied, 53 N.J. 511, 251 A.2d 450 (1969). Moreover, the rights of an assignee are derivative and its rights can rise no higher than those of the assignor. See Mayo v. City National Bank & Trust Co., 56 N.J. 111, 117, 265 A.2d 382 (1970). Here, Whibco, the insured, got all that it was entitled to under the insurance policies. It received a defense and the case was ultimately settled within the policy limits. Accordingly, since Whibco suffered no loss, it had no cause of action against Mutual Marine. Therefore, the assignment by Whibco to General Accident gave General Accident no right of action against Mutual Marine.
We next consider General Accident's primary contentions that Mutual Marine had a duty to keep it advised as to the status of the litigation and that Mutual Marine improperly handled the defense of the claim by failing to engage an economic expert. An insurance carrier is bound by its covenant to defend litigation whenever the complaint against its insured alleges a basis of liability within the covenant to pay. Burd v. Sussex Mutual Insurance Co., 56 N.J. 383, 388, 267 A.2d 7 (1970). Accordingly, an insurer's duty to defend arises when the complaint states a claim constituting a risk insured against. Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173, 607 A.2d 1255 (1992). When the allegations of the complaint *1054 correspond to the language in the policy, there is a duty to defend, regardless of the merits of the claim. Ibid. Whether the claim is groundless, false, or fraudulent is irrelevant to the duty to defend. Danek v. Hommer, 28 N.J.Super. 68, 77, 100 A.2d 198 (App.Div.1953), aff'd o.b., 15 N.J. 573, 105 A.2d 677 (1954). All doubts must be resolved in favor of the insured. Ibid. Here, the allegations of the complaint that Whibco negligently hired Loh required Mutual Marine to provide a defense to Whibco and, presumably, Loh. On the other hand, the allegations of the complaint that Loh negligently caused the accident while driving an automobile within the scope of his employment obligated General Accident to provide a defense to Whibco and, presumably, Loh. At the same time, if Loh was driving an automobile while in the course of his employment, Mutual Marine would not be required to satisfy any judgment rendered in favor of Foster under that theory. In addition, if Loh was not acting within the scope of his employment, Whibco would not be liable. Suffice it to say that the allegations of the complaint entitled Whibco to a defense from both Mutual Marine and General Accident. Mutual Marine provided that defense. General Accident never requested Mutual Marine to keep it advised as to the progress of the litigation or to keep it abreast of any settlement negotiations. In addition, General Accident never inquired of Mutual Marine regarding the status of the litigation or any settlement negotiations. Under these circumstances we decline to impose a duty upon an insurance carrier who has undertaken the defense of a personal injury case to periodically advise another insurance carrier who may ultimately be required to respond in damages of the status of the litigation, including any settlement negotiations. Moreover, we decline to hold that an insurance carrier who may ultimately be required to satisfy the judgment against the insured but who has unilaterally refused to participate in the defense and has failed to request either ongoing advice or consultation from the defending carrier has a cause of action against the defending carrier based on its alleged inadequacy in defending.
The question of whether a duty exists is a matter of law to be decided by the court, not the jury, and is largely determined by considerations of fairness and public policy. Wang v. Allstate Ins. Co., 125 N.J. 2, 15, 592 A.2d 527 (1991); Strachan v. John F. Kennedy Memorial Hosp., 109 N.J. 523, 529, 538 A.2d 346 (1988). "The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solutions." Ibid. (citing Kelly v. Gwinnell, 96 N.J. 538, 544, 476 A.2d 1219 (1984)). We recognize that in New Jersey it is well-established that the duty owed an excess carrier from a primary carrier is identical to that owed to the insured. See Baen v. Farmers Mut. Fire Ins. Co., 318 N.J.Super. 260, 267, 723 A.2d 636 (App. Div.1999); Western World Ins. Co. v. Allstate Ins. Co., 150 N.J.Super. 481, 486-87, 376 A.2d 177 (App.Div.1977); Estate of Louis Penn v. Amalgam. Gen. Agen., 148 N.J.Super. 419, 423, 372 A.2d 1124 (App.Div.1977). However, that duty exists as a result of the distinctive and unique relationship between the two carriers. It is reasonable for the excess carrier to rely on the primary carrier to act in good faith. Baen, supra, 318 N.J.Super. at 267, 723 A.2d 636. The excess carrier may justifiably rely upon a primary carrier to act reasonably in (1) discharging its claims handling obligations; (2) discharging its defense obligations; (3) properly disclosing and apprising the excess carrier of events which are likely to effect that carrier's coverage; and (4) safe-guarding the rights and interests of the excess carrier by not placing the primary carrier's own interests above that of the excess insurer. American Centen. v. Warner-Lambert, 293 N.J.Super. 567, 576, 681 A.2d 1241 (Law Div.1995). This duty is established by industry custom. Ibid. We decline to extend that duty where, as here, two insurance carriers each has a primary obligation to defend. The position of both carriers was the same. General Accident had notice of the claim shortly after it was filed. It had the right, ability, and opportunity to ask Mutual Marine to keep it advised of the status of the litigation and to inquire how Mutual Marine was protecting the interest of their mutual insured. It failed to do so. Having chosen to leave the defense entrusted to Mutual Marine, it must *1055 be precluded, as a matter of law, from seeking to assert a cause of action against Mutual Marine for its alleged negligent or improper handling of the claim. General Accident's conduct was tantamount to a disclaimer, and in Baen, supra, we held that an excess liability insurer that wrongfully denied coverage forfeited its right to control settlement negotiations and to complain of the alleged failure of the primary carrier to act in good faith. See Baen, supra, 318 N.J.Super. at 267, 723 A.2d 636. See also American States Ins. Co. v. Maryland Cas. Co., 427 Pa.Super. 170, 628 A.2d 880, 888 (1993).
Finally, we reject General Accident's contention that Mutual Marine should be equitably estopped from denying its responsibility to pay the settlement General Accident reached with Foster. The equitable remedy of estoppel is designed to prevent injustice where an innocent party has relied on another's conduct to his detriment. Foley Machinery Co. v. Amland Contractors, Inc., 209 N.J.Super. 70, 75, 506 A.2d 1263 (App.Div.1986). In order to establish a claim of equitable estoppel, the party seeking relief must show that the conduct or representation complained of was either intentional or was attended by such circumstances as would both naturally and probably induce the complaining party's action. Miller v. Miller, 97 N.J. 154, 163, 478 A.2d 351 (1984). "Equitable estoppel requires proof of a misrepresentation or concealment of material facts, known to the party allegedly estopped and unknown to the party claiming estoppel, done with the intention or expectation that it will be acted upon by the other party and on which the other party does in fact rely in such a manner as to change his position for the worst." Foley Machinery Co., supra, 209 N.J.Super. at 75, 506 A.2d 1263. Equitable estoppel is applied "only in very compelling circumstances where the interests of justice, morality and common fairness clearly dictate the course." Palatine I v. Planning Bd., 133 N.J. 546, 560, 628 A.2d 321 (1993). Substantial detrimental reliance is not enough, "only justified and reasonable reliance warrant the application of equitable estoppel". Id. at 563, 628 A.2d 321. We conclude that where the dispute involves two insurance carriers, the failure of one carrier to keep the other carrier advised of the progress of the suit, and even the failure to engage an economic expert where, perhaps, one should have been engaged, is not a compelling circumstance calling for the invocation of the doctrine of equitable estoppel.
Affirmed.
NOTES
[1] In the affidavit, house counsel for General Accident also asserted that he was advised to close his file but does not state who gave him that advice.