Kevin **KITCHNEFSKY**
et al., **Plaintiffs,**

v.

**NATIONAL RENT–A–FENCE
OF AMERICA, INC., et
al., Defendants.**

No. CIV.A. 97–CV–1852SSB.

United States District Court,
D. New Jersey.

March 31, 2000.

Allen Maitlin, Sachs, Maitlin, Fleming, Greene, Wilson & Marrote, West Orange, NJ, for Defendant/Third Party Plaintiff National Rent–A–Fence of America, National Construction Rentals, Inc., National Wholesale Supply, Inc., National Business Group, & Fourth Party Defendant TIG Insurance Company.

C. Edward Speidel, Golden, Rothschild, Spagnola, Lundell & Levitt, P.C., Bridgewater, NJ, for Fourth Party Defendant Fireman's Fund.

## OPINION ON DEFENDANT NATIONAL, FOURTH PARTY DEFENDANT TIG, AND FOURTH PARTY PLAINTIFF CONTI'S MOTION FOR SUMMARY JUDGMENT AGAINST FOURTH PARTY DEFENDANT FIREMAN'S FUND

BROTMAN, District Judge.

Presently before this Court is Defendant/Third Party Plaintiff National ("National"),[1] Fourth Party Defendant TIG Insurance Company ("TIG") and Third Party Defendant/Fourth Party Plaintiff Conti's motion for summary judgment[2] seeking indemnification and attorney's fees from Fourth Party Defendant Fireman's Fund ("Fireman's Fund;" "the Primary Insurer"). Jurisdiction is based on 28 U.S.C. § 1332 (diversity of citizenship).

## I. FACTUAL & PROCEDURAL BACKGROUND

The instant matter involves a dispute between insurance companies regarding a primary insurer's duty to indemnify an excess insurer and an insured for the settlement of underlying litigation.

Although the facts giving rise to the original claim are relatively simple, the procedural machination's of the instant matter are fairly complex. On August 7th 1996 Plaintiff Kevin Kitchnefsky ("Kitch-

---

1. For purposes of convenience, "National" refers to the following entities: National Rent–A–Fence of America, Inc.; National Construction Rentals, Inc.; National Wholesale Supply, Inc.; and National Business Group.

2. Initially filed in conjunction with this motion was a separate motion by Third Party Defendant Conti. The motion sought relief from Fireman's Fund for Conti's counsel fees. However, the parties subsequently settled this dispute.

nefsky"), an employee of Third party defendant Conti Environmental Group ("Conti"), was present at a work site in Gloucester County, New Jersey. (*See* Conti Environmental's Statement of Uncontested Material Facts ("Conti Undisputed Facts") at ¶ 2) Pursuant to an agreement with Conti, Defendant National delivered fence panels to the site. (*See id.*) According to the Plaintiff's complaint, the fence panels were delivered in an unbound and unsecured condition. (*See id.*) As employees of Conti were unloading the fence panels from National's delivery truck via a forklift, several panels split off the forks causing severe and permanent injuries to Kitchnefsky, who was rendered a quadriplegic. (*See* id. at ¶¶ 2, 3)

On April 2, 1997, the Plaintiff and his wife instituted suit against National, asserting claims of negligence, breach of contract, strict liability, products liability and failure to warn. (*See id.* at 4) Apparently the Plaintiff did not file suit against Conti because New Jersey's workmen's compensation laws barred Kitchnefsky from instituting a suit against his employer. National, however, filed a third party complaint against Conti on January 16th 1998, seeking complete indemnification pursuant to an agreement between the parties. (*See id.* at ¶ 7)

Approximately nine months later, on September 22nd 1998, counsel for Kitchnefsky transmitted a settlement proposal to National. (*See id.* at ¶ 14) Plaintiff's proposed terms included a demand that: 1) National enter into a consent judgment for $15.5 million dollars; 2) pay the Plaintiff $11 million dollars (the total amount of presumed coverage available to National); and 3) assign National's indemnity claim against Conti to Kitchnefsky. (*See id.* at ¶ 14) Three days later, a copy of the Plaintiff's demand letter was forwarded to Conti. (*See id.*) At this time, both Conti and National were represented by counsel. Conti was defended by its insurer under its comprehensive general liability policies. (See id. at ¶ 15) National was represented by TIG, an insurance carrier with whom it had purchased umbrella coverage. (*See*

Letter from Michael B. Oropollo, Esq., Atty. for Def. Conti, to John Osorio, Esq., Atty. For Def. National, Sept. 30th 1998, attached as Ex. L to Conti Undisputed Facts) Fireman's Fund, the insurer that provided primary coverage to National pursuant to a $1,000,000 commercial automobile liability policy, had yet to receive notice of the claim. (*See id.* at ¶ 16) This oversight appears to have resulted from counsel for Conti and National's mistaken impression that coverage under the Fireman's Fund policy was not implicated by the accident.

Subsequently discovering that coverage potentially existed under the Fireman's Fund policy, Conti sent a letter to Fireman's Fund on October 8th 1998. The letter placed the Primary Insurer on notice of its claim for coverage as an additional insured under National's policy. (*See id.* at ¶ 18) Included within the correspondence were forwarded copies of the amended complaint, both Conti and National's answers, Magistrate Judge Robert B. Kugler's Fourth Amended Scheduling Order, and a letter of correspondence from Conti to National addressing Fireman's Fund related coverage issues. (*See id.*) The letter also requested that Fireman's Fund inform Conti by October 16th 1998 whether it would agree to provide a defense and indemnify the Third party defendant (*See id.* at ¶ 19), and stated that "[i]f you require any further information to evaluate this claim, please do not hesitate to call[.]" (*See* Letter from Elizabeth F. Lorell, Esq., Atty for Def. Conti, to Martin Metzmer, Supervisor, Auto Claims Dep't of Fireman's Fund Insurance Company, Oct. 8th 1998, attached as Ex. N to Conti Undisputed Facts) This request, however, was ignored by the Primary Insurer. (*See* Conti Undisputed Facts at ¶ 19)

Less than one week later, on October 13th 1998, counsel for National forwarded caselaw to Fireman's Fund supporting Conti's prior assertion "that Fireman's Fund would cover both National ... and Conti in regard to this incident." (*See id.*

at ¶ 21) Although the Primary Insurer informed National that it would be discussing the matter in the "near future," there is no indication in the record that any follow-up dialogue occurred.(*See* id. at ¶ 22)

Having received no response from Fireman's Fund regarding its coverage position, on November 3rd 1998 Conti informed the Primary Insurer that it was filing a fourth party complaint. (*See id.* at 24) Conti's letter also apprised the insurer that pursuant to Magistrate Judge Kugler's Fifth Amended Scheduling Order, a settlement conference was calendered for December 1st 1998. (*See id.*) The carrier was given a copy of the order, which directed that "counsel must attend with clients and carriers with settlement authority." (*Id.*)

On December 1st 1998, counsel for the parties and insurance companies appeared before Judge Kugler for the settlement conference. Despite Magistrate Kugler's instruction to the contrary, counsel for Fireman's Fund arrived at the courthouse without its client or authority to settle. (*See* Fireman's Fund Undisputed Facts at ¶ 3, 4) During a conference amongst the various defense counsels, the Primary Insurer's attorney stated that the carrier had not taken a position with respect to coverage. (*See id.* at ¶ 3,4) Although Fireman's Fund's counsel did not participate further in the December 1st settlement discussions, he remained present in the courthouse the entire day. (*See* Conti Undisputed Facts at ¶ 27)

After over ten hours of negotiations, Plaintiff's case was settled for a total of $6.25 million. (*See id.* at ¶ 28) Defendant National agreed to contribute $4,937,500, Conti $812,000, and Kitchnefsky's worker's compensation carrier paid $500,000. (*See id.*) Because Fireman's Fund refused at that time to contribute to the settlement, National's excess insurer TIG agreed to fund the entire agreement. (*See* Cert. of Allan Maitlin at ¶ 9) At no point did counsel for Fireman's Fund object to the matter being settled, nor was there any state-

ment that the amount being settled was unreasonable. (*See* Fireman's Fund Undisputed Facts at ¶ 6) As part of the final settlement agreement between the parties, Conti assigned its indemnification rights under Fireman's Fund's policy to National and TIG. (*See* Conti Undisputed Facts at ¶ 32)

After the December 1st settlement, counsel for Conti repeatedly asked Fireman's Fund to clarify its position regarding coverage and indemnity under its policy. (*See* id. at ¶ 31) The insurer rejected counsel for Conti's invitation to review and inspect its entire litigation file, instead requesting certain categories of discovery documents. Conti complied with Fireman's Fund's requests by promptly forwarding the documents to the insurer thereafter. (*See id.*) However, despite receipt of these documents and Conti's repeated requests, Fireman's Fund refused to take any position in the matter.

In an attempt to resolve the dispute between Fireman's Fund and its insureds, Judge Kugler met with the parties on several occasions. (*See id.* at ¶¶ 36 & 37) At an April 16th 1999 settlement conference, Fireman's Fund conceded that both National and Conti were insureds under the policy at issue. (*See id.* at 39) Because Fireman's Fund nonetheless refused to provide a defense and indemnification, Magistrate Judge Kugler set forth a dispositive motion schedule which permitted TIG (National's excess insurer pursuant to umbrella coverage) and Conti to file motions against the Primary Insurer. Shortly thereafter, on May 5th 1999, National's Third Party Complaint was amended to include Fireman's Fund. Additionally TIG, National's excess insurer, asserted a cross-claim against Fireman's Fund, seeking indemnification from the insurer. (*See* Docket at ¶¶ 37 & 38) Shortly thereafter this motion for summary judgment was filed.

## II. SUMMARY JUDGMENT STANDARD

The standard for granting summary judgment is a stringent but surmountable

one. That is, summary judgment is appropriate only when the materials of record "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Serbin v. Bora Corp.,* 96 F.3d 66, 69 n. 2 (3d Cir.1996). In deciding whether there is a disputed issue of material fact, the court must grant all reasonable inferences from the evidence in favor of the non-moving party. *Serbin,* 96 F.3d at 69 n. 2. The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Supreme Court decisions mandate that a motion for summary judgment must be granted unless the party opposing the motion "provides evidence 'such that a reasonable jury could return a verdict for the non-moving party.'" *Lawrence v. National Westminster Bank of New Jersey,* 98 F.3d 61, 65 (3d Cir.1996) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). Moreover, once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the non-moving party must "by affidavits or by depositions and admissions on file 'mak[e] a showing sufficient to establish ... [that a genuine issue of material fact exists as to each] ... element essential to that party's case.'" *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.,* 812 F.2d 141, 144 (3d Cir.1987) (declaring that a non-movant may not "rest upon mere allegations, general denials, or ... vague statements"). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly

probative," the court may grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

## III.  DISCUSSION

### 1) National and TIG's Indemnity Claim

In the instant matter, Fireman's Fund concedes that both National and Conti are covered under the policy. (*See* Fireman's Fund's Opp. Br. at 13)(acknowledging Fireman's Fund "as the insurer to both National and Conti"). Nonetheless, the Primary Insurer advances two arguments in favor of its position that it does not owe a duty to indemnify: 1) Fireman's Fund contends that TIG's initial assumption of National's defense estops it from denying primary liability; and 2) the Primary Insurer contends that National and TIG's assumption of the defense and subsequent settlement constituted a breach of the insurance agreement that relieved the Primary Insurer from liability under the policy.

### A) *Fireman's Fund's Estoppel Argument*

█ Fireman's Fund contends that TIG's mistaken assumption of primary liability[3] estopped the excess carrier from withdrawing its defense to National and from providing primary indemnification to the insured. In support of its assertion, Fireman's Fund cites to *Griggs v. Bertram,* 88 N.J. 347, 443 A.2d 163 (1982).

In *Griggs,* New Jersey's supreme court estopped an insurer from denying coverage to its insured when the carrier neglected to notify the insured within a reasonable time that it was aware of a possibility of non-coverage. *See id.* at 167. Pivotal to the *Griggs* court's determination was its conclusion that the carrier's failure to timely notify the insured of the grounds for disclaimer was "inconsistent with the overriding fiduciary duty of an insurer to deal with an insured

---

**3.** Fireman's Fund has provided no evidence, nor has it argued, that the assumption of the defense and consequent failure to timely noti- fy the insurer was anything but an initial mistake as to the applicable caselaw.

fairly and candidly so that the insured can, if necessary, protect itself." *Id.* at 170. Claiming that primary insurers may also invoke the protection of *Griggs,* Fireman's Fund argues that excess carrier TIG is estopped from denying primary coverage. The Court disagrees.

Unlike in *Griggs,* the party seeking to invoke the estoppel in the instant case is not the insured, but rather the primary insurer. Extending *Griggs'* protection to a primary insurer would ignore the rationale of the supreme court's decision, which focused upon the insured's need for protection. Here, TIG is not attempting to deny coverage to National, its insured. Rather the excess insurer is merely seeking indemnification from the primary insurer for money it expended on the insured's behalf. Application of estoppel in the instant matter would stand the *Griggs* rationale on its head by encouraging the primary insurer to abandon the insured whenever a third party insurer made an initial mistake as to coverage. Additionally it would discourage insurers like TIG from protecting the insured in instances where a primary insurer seeks to avoid its bargained for liability. Because the Court finds that New Jersey's supreme court did not intend such a result, Fireman's Fund's estoppel argument is rejected.

A similar conclusion was reached in *Vornado, Inc. v. Liberty Mutual Insurance Co.,* 106 N.J.Super. 111, 254 A.2d 325 (1969). In *Vornado,* an insurer mistakenly assumed the defense of a claim which was not covered by its policy. *See id.* at 327. The mistaken insurer continued to defend the suit for over a year, without informing the carrier that owed the insured the contractual obligation to indemnify and defend. *See id.* at 327–28. The insured, who sought judgment against *either* insurer, argued that the carrier's mistaken assumption of the defense estopped it from denying coverage. *See id.* at 329. While the *Vornado* court recognized that "the party who should have had charge of the case from the beginning has been deprived of the opportunity to handle [the] defense," it nonetheless concluded that the "contract should outweigh the assumption." *Id.* Accordingly the court held that "[a]bsent a showing of prejudice ... the [insurer with the contractual duty], in spite of the late notice of suit, should be held to its contract to defend and pay and should not shift the burden of performance ... on the grounds of estoppel[.]" *Id.* at 328–29. The rationale of the *Vornado* court applies with equal force here, where the mistake of National and Conti resulted in their consequent assumption of the defense.

### B) *Fireman's Fund's Assumption of Liability Argument*

█ Fireman's Fund also claims that National and TIG's assumption of the defense and subsequent settlement constituted a breach of the insurance agreement that released the insurer from liability.[4] In *Kindervater v. Motorists Casualty Insurance. Co.,* 120 N.J.L. 373, 199 A. 606 (1938), the Court of Errors and Appeals held that an insured's voluntary confession of liability to an injured party relieved the insurer from liability, regardless of whether the breach resulted in prejudice to the insurer. *See id.* at 607. Citing to *Kindervater,* Fireman's Fund contends that the collaborative efforts of TIG and National deprived the Primary Insurer of its right to control the litigation and settlement of the case, thereby relieving it from liability. However this argument fails to recognize that the assumption of the obligation by TIG and National was necessitated by Fireman's Fund's failure to adequately investigate or take any position with respect

4. Fireman's Fund's opposition brief refers to the acts of TIG and National collectively with respect to its argument that the assumption of the defense and settlement of the case breached the insurance agreement and relieved the Primary Insurer from liability. The Court recognizes that because National and Fire-

man's Fund were the sole parties to the agreement, National was the only party that could have breached the contract. However, because the acts complained of focus primarily upon actions taken via the instructions of National and TIG's shared counsel, the Court will refer to both entities where appropriate.

to either the claim or settlement agreement.

In the instant matter, Fireman's Fund was informed of the claims approximately two months prior to the December 1st settlement conference, yet failed to provide any meaningful response to its insureds. In an October 8th 1998 letter, counsel for third party defendant Conti informed the insurer that it was seeking coverage under the policies. Enclosed with the transmittal were copies of the amended complaint, National's answer[5], and Conti's answer to National's third party complaint. (*See* Letter from Elizabeth F. Lorell, Esq., Atty. for Third Party Defendant Conti, to Martin Metzmer, Supervisor of Auto Claims Department of Fireman's Fund Insurance Company (Oct. 8th 1998), attached as Ex. N to Conti Undisputed Facts) The letter, which asked Fireman's Fund to respond by October 16th with its coverage position,[6] informed the insurer that "[i]f you require any further information to evaluate this claim, please do not hesitate to contact me directly." (*Id.*) In the two months prior to the settlement conference, Fireman's Fund never responded with a clarification of its coverage position, nor

did it request any documentation from Conti.

The insurer responded with similar ambivalence to correspondence from National. On October 13th 1998, a letter was sent from National to Fireman's Fund. In the letter, counsel for National explained that it was forwarding caselaw supporting Conti's previous assertion that "Fireman's policy would cover both National[7] ... and Conti in regard to this incident." (*See* Letter from John H. Osorio, counsel for TIG/National, to Ms. Laura Roberts of Fireman's Fund (October 13th 1998), attached to Ex. N of Conti Undisputed Facts) Similar to the correspondence from Conti, National instructed the Primary Insurer to contact the insured with any questions concerning the claim. (*See id.*) While a brief letter from Fireman's Fund informed National that it would discuss the matter in the "near future," there is no evidence in the record, nor does Fireman's Fund contend, that any follow-up dialogue occurred. (*See* Conti Undisputed Facts at ¶ 22)

The practical effect of the Primary Insurer's response to both Conti and National was to disregard the correspondence

---

5. National's answer to the amended complaint included a third party complaint against Conti. (*See* National's Answer to Amended Complaint, filed on January 16th 1998)

6. At argument counsel for Fireman's Fund defended the Primary Insurer's failure to timely reply. If it is a common industry practice to take approximately two months to determine whether a duty to defend exists, then the industry practice should be changed.

Moreover, viewing the face of Kitchnefsky's complaint in conjunction with the applicable law, it appears obvious a duty to defend existed in the instant matter. This conclusion is supported by ·a review of Fireman's Fund's submissions. While the Primary Insurer's brief argues that it may have been able to succeed at trial on a liability defense (i.e. shifting entire blame upon its additional insured Conti, who was insulated by New Jersey's workmen's compensation laws), Fireman's Fund fails to articulate any facts it was aware of at any time that militated against a

decision to provide a defense to the insureds. (*See generally,* Fireman's Fund's Opp. Br.) Assuming arguendo that Fireman's Fund's assertion is accurate, it would nonetheless still owe its insureds a duty to defend. (*See generally,* Fireman's Fund's Opp. Br.)

7. Fireman's Fund argues that this letter did not qualify to serve notice upon the insurer that National was seeking coverage. The Court disagrees. While the letter did not formally state that it served as the insurer's official notice, it clearly evinced an intent to put the insurer on notice that a coverage obligation was owed to National. This letter, coupled with the fact that Fireman's Fund had already been provided a copy of National's answer in Conti's October 8th correspondence, satisfies New Jersey's liberal notice requirements. *See American Cas. Co. of Reading, Pa. v. Continisio,* 17 F.3d 62, 68 (3d Cir.1994)(applying New Jersey law and concluding that the notice requirements governing occurrence based policies, such as the one at issue, should be "liberally and practically construed").

and accompanying invitations to access the information accumulated by the parties during the course of the litigation. At the time these letters were sent, Conti and National had already completed a majority of the discovery in the case, having taken eighteen depositions in the matter. (*See* Conti Undisputed Facts at ¶ 11) Thus, these offers constituted an invitation to a wealth of information that was ignored by Fireman's Fund. This callous indifference is especially egregious when one considers that on November 3rd, Fireman's Fund was notified that a December 1st settlement conference was ordered by Judge Kugler. The magistrate's Fifth Amended Scheduling Order, a copy of which was enclosed in the letter, instructed that "[c]ounsel must attend *with client and carriers with settlement authority.*" (*See* Fifth Amended Scheduling Order, dated Oct. 16th 1999)(emphasis added)

Instead of complying with Magistrate Judge Kugler's order, counsel for Fireman's Fund arrived at the conference without either a client or authority to settle. Additionally, it does not appear that the insurer made any efforts to familiarize itself with the merits of the claim during the approximate month that elapsed between the November 3rd notification and the December 1st conference. Rather than accord any significance to the fact that Magistrate Kugler had deemed the case ripe for a settlement conference, Fireman's Fund elected to send counsel to the conference, without authority, to relay the message that the insurer had taken no position as to its responsibilities under the policies. After communicating this position to the attorneys for the various defendants, counsel for Fireman's Fund did not participate further in the December 1st settlement negotiations. However the Pri-

mary Insurer's attorney remained present at the courthouse throughout the remainder of the ten hour conference and did not object to the matter being settled, or to the amount of the agreement.

These facts serve to distinguish the instant action from *Kindervater*, where the insured's unprovoked confession of liability effectively precluded the insurer from taking an active role in the defense of the claim. Here, the insurer was given an opportunity, yet refused to take any meaningful action. Under New Jersey caselaw "an insurer is entitled to a reasonable period of time in which to investigate whether the particular incident involves a risk covered by the terms of the policy." *Griggs*, 443 A.2d at 167. However this line of cases does not grant a carrier license to sit idly by for two months, especially when the insurer is aware that the case has been pending for over a year, substantial discovery has been completed, and a settlement conference has been ordered by the magistrate. The Court finds Fireman's Fund's failure to undertake any substantial investigatory efforts in light of these circumstances patently unreasonable.

New Jersey law provides that in instances where the insurer "delays unreasonably in investigating and dealing with a claim asserted against its insured, the insured may make a good faith reasonable settlement and then recover the settlement amount from the insurer, despite the policy provision conditioning recovery against the insurer on ... acquiescence by the insurer in the settlement." *Fireman's Fund Ins. Co. v. Security Ins. Co. of Hartford*, 72 N.J. 63, 367 A.2d 864, 869 (1976).[8] Because the Court concludes that Fireman's Fund's inaction under the circumstances herein was unreasonable as a matter of law, it is precluded from relying

---

8. The Court finds no indication in the caselaw, nor has Fireman's Fund argued, that an insured's failure to timely notify relieves the insurer of its duty to act within a reasonable time to evaluate the insured's claim once it is notified. Rather a review of the caselaw leads to the conclusion that, absent a showing of appreciable prejudice, an insurer given late notice is required to act within a reasonable time to investigate the claim. *See Cooper v. Government Employees Ins. Co.*, 51 N.J. 86, 237 A.2d 870, 874 (1968)(explaining that the failure to give an insurer timely notice does not release the insurer from its obligations absent a showing of appreciable prejudice).

on *Kindervater.* Moreover, the Court finds the Primary Insurer's failure to raise any objections to the agreement at the December 1st settlement conference an alternative and equally compelling ground for distinguishing the instant matter from *Kindervater.*

## C) Application of Late Notice Caselaw

■ The Court instead finds this case controlled by the law of New Jersey governing "late notice." In the instant matter, Fireman's Fund was not given notice of the incident until October of 1998, approximately a year and a half after suit was instituted. Thus it is clear that the notice given was "late." However, under New Jersey law an insurer seeking release from liability due to an insured's failure to timely notify bears the burden of proving that the late notice given by the insured resulted in "appreciable prejudice." *See Cooper v. Government Employees Ins. Co.,* 51 N.J. 86, 237 A.2d 870, 874 (1968). New Jersey's appellate division has imposed this burden in instances where the alleged policy violations interfered with the insurer's "right to control the defense and settlement of claims[.]" *Solvents Recovery Serv. of New England,* 218 N.J.Super. 49, 526 A.2d 1112, 1114–15 (1987). Thus, in order for Fireman's Fund to be released from liability, the insurer must demonstrate that the failure to provide timely notification resulted in appreciable prejudice.

■ Although little direction has been given regarding the meaning of "appreciable prejudice," in *Morales v. National Grange Mutual Insurance Co.,* a New Jersey superior court identified two factors relevant to an "appreciable prejudice" inquiry. 176 N.J.Super. 347, 423 A.2d 325, 329–30 (1980). The first is "whether substantial rights have been irretrievably lost by virtue of the failure of the insured to notify the carrier in a timely fashion." *Id.*

This factor has been interpreted as requiring the insurer to " 'establish more than the mere fact that it cannot employ its normal procedures in investigating and evaluating the claim'[, r]ather it must show that substantial rights have been irretrievably lost." *Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.,* 817 F.Supp. 1136, 1158 (D.N.J.1993)(quoting *Morales,* 423 A.2d at 329).

■ While it is clear that neither National or Conti gave Fireman's Fund timely notice, it does not appear that any of the insurer's rights were irretrievably lost. As discussed above, a wealth of information was available to Fireman's Fund at the time it received notification of the claim. Any rights that were "irretrievably lost" resulted from Fireman's Fund's subsequent failure to act, not from the late notice provided by the insured. New Jersey caselaw is clear that an insurer "must establish more than the mere fact that it cannot employ its normal procedures in investigating and evaluating [a] claim." *Morales,* 423 A.2d at 329. In the instant matter, the result of the late notice was that it necessitated a change in Fireman's Fund's methods of investigation. As discussed *supra,* this does not qualify as an irretrievable loss of rights.

The Court concludes that the Primary Insurer has likewise failed to satisfy *Morales'* second prong, which requires the insurer to demonstrate a likelihood of success on the underlying claim. *See Morales,* 423 A.2d at 330. Here the Primary Insurer's argument appears premised upon its assertion that at trial it could possibly establish that Conti was solely liable for the accident, thereby precluding Kitchnefsky from any recovery because of New Jersey's workmen's compensation laws. However Fireman's Fund, the party that bears the burden of establishing the prejudice, has failed to provide any concrete evidence supporting its contention.[9]

---

9. In its opposition brief, counsel for Fireman's Fund makes conclusory assertions that the complaint and discovery support a conclusion that "it was likely that Conti, not National, acted negligently." (*See* Fireman's Fund's Opp. Br. at 7) Fireman's Fund has provided no competent evidence in support of its assertion. Such a showing is insufficient where, as here, the party bears the burden of

In fact an examination of the complaint (which includes assertions that National negligently packaged, loaded, delivered, and transported the fencing) leads to an opposite conclusion. (*See* Amended Compl. at ¶ 12,14) Thus the Court finds the Primary Insurer's argument speculative in nature. While Fireman's Fund requests discovery to pursue this theory of defense, the Court does not deem it appropriate here, where the insurer had the opportunity to request such information over two months prior to settlement yet failed to do so.

■ Moreover, given the gravity of the injuries (the victim was rendered a quadriplegic), it is not reasonable that the underlying claim could have been settled for less than $1,000,000. Under New Jersey law, the primary insurer owes both the insured and the excess insurer a good faith obligation to consider settlement offers in excess of its policy limits. *See Fireman's Fund Ins. Co. v. Hartford,* 72 N.J. 63, 367 A.2d 864, 870–71 (1976); *see also Estate of Penn v. Amalgamated Gen. Agencies,* 148 N.J.Super. 419, 372 A.2d 1124, 1127 (1977)(explaining that a primary carrier owes to the excess carrier the same positive duty it owes to the insured to take the initiative and attempt to negotiate settlement). As the primary insurer, Fireman's Fund was required to give equal consideration to the potentially devastating impact that an adverse jury verdict could have upon the excess insurer and the insured. This obligation essentially precludes Fireman's Fund from arguing that it should have been entitled to "roll the dice" with the other parties' money in hopes of reducing its overall liability.[10] The speculative nature of Fireman's Fund's argument, and its duty to give equal consideration to the interests of both the insured and excess insurer, leads to the conclusion that Fireman's Fund has also failed to satisfy *Morales'* second prong, which requires the insurer to demonstrate a likelihood of success on the underlying claim. *See Morales,* 423 A.2d at 330. As a result the Court finds the Primary Insurer liable under its policy, thus entitling TIG to seek indemnification from Fireman's Fund so long as the settlement agreement was reasonable and entered into in good faith.[11] *See Hartford,* 367 A.2d at 870.

Comparing the amount of the settlement with the facts of this case, the Court finds that the agreement was reasonable as a matter of law. Because of the severity of the injury, it was clear that the insureds were exposed to a jury verdict well in excess of the six and one quarter million dollar amount agreed upon by the parties. Given this potential exposure, it is likewise

proof. The Court finds the Primary Insurer's speculative contention insufficient to satisfy the requirements of *Morales.*

**10.** Even assuming that Fireman's Fund had taken control of the case and had refused to settle for the amount agreed upon by the parties, it could not have precluded the insureds from settling the claim. Under *Fireman's Fund v. Security Insurance Co. of Hartford,* when

> the potential loss and the proposed settlement exceed ... the limits of the policy ... the insured ... *need not be 'required to wait until after the storm before seeking refuge' when faced with a 'potential judgment far in excess of the limits of the policy.'* [The insured] should be permitted ... to proceed to make a prudent good faith settlement for an amount in excess of the policy limits[.]

367 A.2d 864, 869 (N.J.1976) (citations omitted)(emphasis added). Here, the gravity of the injuries made it obvious that the under-

lying claim could not have been settled for less than the Primary Insurer's policy limits. It is clear that had Fireman's Fund been convinced that nonsettlement and litigation was the most prudent position to assume, it would still have been legally powerless to force the insured to continue with the litigation.

**11.** Relying on *General Accident Insurance Co. v. New York Marine and General Insurance Co.,* 320 N.J.Super. 546, 727 A.2d 1050 (1999), Fireman's Fund contends that the assignment of Conti's indemnification rights to TIG/National is unenforceable because Conti had no rights to assign. Because the $1,000,000 per occurrence limit of the Primary Insurer's policy is easily exhausted by the judgment against National, the Court need not address the merits of this argument.

clear that the settlement figure represented a reasonable amount. Other factors providing an indicia of reasonableness are the extended period of negotiation,[12] the considerable discrepancy between Kitchnefsky's initial demand and the ultimate settlement figure,[13] and Fireman's Fund's failure to voice any objections to the amount of the agreement.[14]

Although Fireman's Fund's opposition brief does not appear to take issue with the amount of the settlement, it questions TIG's motivation for entering the agreement. The Primary Insurer claims that the excess insurer's "rush" to settle was motivated by its desire to avoid the alleged estoppel effect of *Griggs*. However, Fireman's Fund's argument is not supported by any evidence, nor is it based on a logical premise. It defies reason to think that a party would incur an additional $ 4,000,000 in liability in order to avoid assuming a debt of $1,000,000. Rather, the fact that the excess insurer was willing to contribute $4,000,000 of its own money to settle the case provides a prima facie showing of good faith and reasonableness that Fireman's Fund has failed to rebut. Therefore the Court concludes that the part of National/TIG's motion for summary judgment seeking indemnification from Fireman's Fund for the amount of the insurer's primary policy limits is granted.

### 2) Request For Attorney's Fees and Costs

TIG also seeks recovery of counsel fees and costs from Fireman's Fund. Because TIG's efforts were the result of its own mistaken assumption, the excess insurer is not entitled to recover for attorney's fees incurred prior to its October 13th, 1998 letter to Fireman's Fund.

■ In *SL Industries, Inc. v. American Motorists Insurance Co.*, 128 N.J. 188, 607 A.2d 1266, 1273 (1992), the supreme court held that a "delay in providing the relevant information estops [an insured] from claiming reimbursement for its full defense costs. [An insured] may recover only those costs expended between the date it notified [the insurer] of the facts necessary to determine coverage and the date of the settlement." Here National did not make a request for coverage until October 13th, 1998, less than two months before settlement.[15] At the time Fireman's Fund received the letter, it already had the complaint and National's answer by virtue of the previous correspondence from Conti. Thus Fireman's Fund had "the facts necessary to determine coverage." The Court concludes that, like the insured in *SL Industries*, TIG is entitled to recover costs and fees expended on behalf of the insured's defense between the date of notification (October 13th 1998) and the date of the December 1st 1998 settlement.[16]

12. The parties first broached the topic of settlement during the summer of 1998. (*See* Conti Undisputed Facts at ¶ 12) In September of 1998, counsel for the Plaintiff submitted its original settlement demand of $ 15.5 million dollars. (*See id.* at ¶ 14) The December 1st settlement negotiations, which were supervised by Judge Kugler, lasted over ten hours. (*See* Conti Undisputed Facts at ¶¶ 26, 28)

13. In September 22nd 1998 correspondence to National, the Plaintiff initially demanded $ 15.5 million dollars. (*See* Conti Undisputed Facts at 14) The parties ultimately settled for $ 6.25 million dollars, over $ 9 million dollars below the initial demand. (*See* Conti Undisputed Facts at ¶ 28)

14. In addition to its failure to make any objections at the December 1st conference, absent from Fireman's Fund's opposition is any

argument attacking the amount of the settlement agreement. (*See generally* Fireman's Fund Opp. Br.)

15. In footnote 7, the Court rejected Fireman's Fund's argument that National did not provide notice of claim until after the December 1st settlement. The Court concluded that the October 13th letter, coupled with the fact that Fireman's Fund had previously received National's answer, satisfied New Jersey's liberal notice requirements. *See supra*, note 7.

16. Because TIG's role as excess insurer required the carrier to maintain its own counsel during this period, the recovery will not include costs and legal fees expended solely to protect the interests of TIG. Rather the Court shall limit recovery to only those fees which a primary insurer would traditionally incur on behalf of its insured (i.e.National). This de-

Since the court does not have before it the information necessary to determine the amount of these costs and fees, counsel is instructed to provide it with such information within two weeks from the date of this Court's opinion and order.

## IV. CONCLUSION

For the reasons discussed above, National and TIG's motion for summary judgment against Fireman's Fund is granted, except that the recovery of counsel fees and costs shall be limited to the period between the date of notification of Fireman's Fund and the date of settlement of the underlying litigation.

The court will enter an appropriate order.

## ORDER REGARDING DEFENDANT NATIONAL, FOURTH PARTY DEFENDANT TIG, AND FOURTH PARTY PLAINTIFF CONTI'S MOTION FOR SUMMARY JUDGMENT AGAINST FIREMAN'S FUND AND FOURTH PARTY PLAINTIFF CONTI'S MOTION FOR SUMMARY JUDGMENT AGAINST FIREMAN'S FUND

THIS MATTER having come before the Court on Defendant/Third Party Plaintiff National,[1] Third Party Defendant/Fourth Party Plaintiff Conti, and Fourth Party Defendant TIG Insurance Company's ("TIG") Motion for Summary Judgment against Fourth Party Defendant Fireman's Fund and on Third Party Defendant/Fourth Party Plaintiff Conti's separate motion for summary judgment seeking attorney's fees from Fourth Party Defendant Fireman's Fund;

The Court having considered the record and the submissions of the parties; and

Having heard argument on the matter on March 21st 2000; and

For the reasons set forth in the Court's opinion of this date;

**IT IS** on this *31 st* day of March, 2000 HEREBY

**ORDERED** that the part of National, TIG, and Conti's Motion for Summary Judgment seeking indemnification against Fireman's Fund in the amount of Fireman's Fund's policy limits of $1,000,000 is **GRANTED;** AND IT IS FURTHER

**ORDERED** that the part of the motion seeking counsel fees and costs[2] is **GRANTED;** except that the recovery of counsel fees and costs shall be limited to the period between the date of notification, October 13th 1998, and the date of settlement, December 1st, 1998;[3] AND IT IS FURTHER

**ORDERED** that counsel for the movant shall submit to the Court within two weeks from this date an affidavit of fees and costs incurred during this time period; AND IT IS ALSO

**ORDERED** that because Conti has settled its claim against Fireman's Fund for counsel fees, the Fourth Party Plaintiff's

termination shall be made by the Court following counsel's timely submission of its affidavit setting forth the relevant costs and fees incurred during this period.

1. For purposes of convenience, "National" refers to the following entities: National rentA-Fence of America, Inc.; National Construction Rentals, Inc.; National Wholesale Supply, Inc.; and National Business Group.

2. Since Fourth Party Plaintiff Conti filed a separate motion against Fireman's Fund seeking counsel fees, this portion of the order does not pertain to Fourth Party Plaintiff Conti.

3. TIG's role as excess insurer required the carrier to maintain its own counsel during this period; thus the recovery will not include costs and legal fees expended solely to protect the interests of TIG. Rather the Court shall limit recovery to only those fees which a primary insurer would traditionally incur on behalf of its insured (i.e.National). This determination shall be made by the Court following counsel's timely submission of its affidavit setting forth the relevant costs and fees incurred during this period.

separate summary judgment motion for counsel fees is **DISMISSED** as **MOOT**.