# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 15, 2008

Charles R. Fulbruge III
Clerk

No. 06-10608

TRUMBLE STEEL ERECTORS, INC.

Plaintiff-Appellant

v.

JOHNNY MOSS, K & S Group, Inc. d/b/a K & S Insurance Agency;
WHITE HILL PLAZA INC. d/b/a K & S Insurance Agency

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:04-CV-289

Before KING, HIGGINBOTHAM, and WIENER, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Trumble Steel Erectors, Inc. ("Trumble") appeals the district court's grant of summary judgment. Trumble contends that the court erred when it ruled that Trumble had failed to demonstrate the existence of a genuine issue of material fact on the basis of which a reasonable jury could find that Trumble's insurer, Special Risk Services Group, L.L.C., as Managing General Underwriter on Behalf of Certain Underwriters at Lloyd's of London

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

("SRS"), suffered material prejudice as a result of not receiving timely notification from Trumble of a fatal crane accident. SRS, now standing in the shoes of Trumble by virtue of subrogation, contends that untimely notice caused it prejudice by preventing it from conducting a so-called "shock-loss investigation." Concluding that Trumble's summary judgment evidence does not establish a genuine issue of material fact regarding prejudice, we affirm the district court's judgment.[1]

## I. FACTS AND PROCEEDINGS

On September 26, 2003, a portion of a crane operated by Trumble on the campus of Texas Tech University came in contact with an electric power line. This resulted in the electrocution death of Richard Tankersley when he reached out to steady a bucket suspended on the end of the crane's cable. Trumble's crane operation was part of its work as a subcontractor for Deerwood Construction, Inc. At the time of the accident, Trumble was insured by SRS. The insurance policy required that SRS receive notice of "occurrences" like the Tankersley accident "as soon as practicable."

On the day of this accident, three entities — Texas Tech University Police Department, Lubbock Power and Light, and the Occupational Safety and Health Administration ("OSHA") — conducted independent investigations that included photographing the scene and taking witness statements. OSHA eventually cited Trumble for operating its crane too close to power lines, in violation of OSHA crane-operation regulations. During his deposition, Trumble's president, Charles Trumble, conceded that the crane was located too close to the power lines. SRS did not conduct an immediate investigation of its own because it was unaware of the accident.

---

[1] The plaintiff-appellant in this case is nominally Trumble. Yet, SRS is pursuing this action by standing in the shoes of Trumble. In the interest of clarity, we shall, when appropriate, refer to appellant simply as "SRS."

As a regular practice, Trumble presents a daily work ticket to its customers for signature before starting work. Trumble's work tickets contain a "hold harmless clause" specifying that the customer will indemnify Trumble against a variety of possible claims (not including Trumble's own negligence). For some unknown reason, Trumble did not have Deerwood sign a work ticket for the day and job in question.

As soon as he learned of the accident, Charles Trumble called his insurance agent, defendant-appellee Johnny Moss, an employee of defendant-appellee White Hill Plaza, Inc. d/b/a/ K&S Insurance Agency, who had placed Trumble's SRS policy.[2] The K&S Defendants did not notify SRS of the crane accident at that time.

Less than three months after the crane accident, Tankersley's estate and survivors filed suit against Trumble and Deerwood for Tankersley's death. It was not until December 31, 2003, after the K&S Defendants received word of the Tankersley suit, that they notified SRS of the accident. The district court set an intended trial date of early August 2005, some eighteen months after SRS first received notice of the occurrence.

This suit originated as a declaratory judgment action in district court brought by SRS against Trumble to determine whether SRS had a duty to defend or indemnify Trumble in the Tankersley suit, given Trumble's alleged failure to provide timely notice to SRS. Trumble then filed the instant third-party claim against the K&S Defendants for their alleged negligence and breach of contract in failing to forward timely notice to SRS.[3]

Late in 2005, SRS and Trumble reached a settlement regarding their liability vis-a-vis each other and agreed that the declaratory judgment action

---

[2] Hereafter, we refer to the defendants-appellants collectively as the "K&S Defendants."

[3] Whether the K&S Defendants had an obligation to notify SRS of the accident timely is not at issue for the purposes of this appeal.

was moot. They also agreed that SRS would assert its contractual subrogation rights to step into the shoes of Trumble and continue the third-party claim that Trumble had asserted against the K&S Defendants.

Trumble and the K&S Defendants filed cross-motions for summary judgment. The district court granted the K&S Defendants' motion and denied Trumble's. This timely appeal followed.

## II. ANALYSIS

### A.      Standard of Review

We review de novo a district court's grant of summary judgment.[4] Summary judgment is appropriate only if there is no genuine issue of material fact.[5] In determining whether a genuine issue of material fact exists, courts view all facts and draw all inferences therefrom in favor of the non-moving party.[6] The court's role at the summary judgment stage is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[7] In a diversity case like this one, the substantive law of the forum state, here Texas, controls.[8]

### B.      Whether SRS Made a Sufficient Prejudice Showing

#### 1.      Applicable Law

Under Texas law, when an insurance policy requires that the policyholder notify its insurer of any claim or suit "as soon as practicable," the policyholder's "failure to timely notify its insurer of a claim or suit does not defeat coverage if

---

[4] Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 259–60 (5th Cir. 2003).

[5] Weeks Marine, Inc. v. Fireman's Fund Ins. Co., 340 F.3d 233, 235 (5th Cir. 2003).

[6] Id.

[7] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[8] See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

the insurer was not prejudiced by the delay."[9]  And, "[i]n many instances of untimely notice of a claim, the insurer is not prejudiced at all."[10]  The prejudice requirement is consistent with the general principle "that an immaterial breach does not deprive the insurer of the benefit of the bargain and thus cannot relieve the insurer of the contractual coverage obligation."[11]  The converse is also true: "[W]hen one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform."[12]  "Whether an insurer is prejudiced by delayed notice is generally a question of fact . . . ."[13]  Courts may determine the issue as a matter of law, however, when the material facts are undisputed.[14]

---

[9]  PAJ, Inc. v. Hanover Ins. Co., 243 S.W.3d 630, 631, 636–37 (Tex. 2008) (emphasis added).

[10]  Hanson Prod. Co. v. Ams. Ins. Co., 108 F.3d 627, 631 (5th Cir. 1997).  In PAJ, the Texas Supreme Court cited approvingly our Hanson opinion in which we made an Erie determination that Texas law would require insurers to show prejudice in late-notice cases, i.e., that courts would not presume prejudice.  PAJ, 243 S.W.3d at 634 (citing Hanson, 108 F.3d at 630–31).

[11]  PAJ, 243 S.W.3d at 631 (citing Hernandez v. Gulf Group Lloyds, 875 S.W.2d 691, 692 (Tex. 1994)).

[12]  Hernandez, 875 S.W.2d at 692 (citing Jack v. State, 694 S.W.2d 391, 398–99 (Tex. App. — San Antonio 1985, writ ref'd n.r.e.)).

[13]  St. Paul Guardian Ins. Co. v. Centrum G.S. Ltd., 383 F. Supp. 2d 891, 902 (N.D. Tex. 2003) (citing Duzich v. Marine Office of Am. Corp., 980 S.W.2d 857, 866 (Tex. App. — Corpus Christi 1998, pet. denied)); see Coastal Ref. & Mktg., Inc. v. U.S. Fid. & Guar. Co., 218 S.W.3d 279, 287 (Tex. App. — Houston [14th Dist.] 2007, pet. denied).

[14]  St. Paul Guardian, 383 F. Supp. 2d at 902.

"Prejudice" is the loss of a valuable right or benefit.[15] Such a loss may be described as suffering a material "adverse change in position due to the delay."[16] Because of the inherently uncertain nature of its burden — demonstrating how events may have differed under a different set of facts — an insurer need not "show precisely what the outcome would have been had timely notice been given."[17] Additionally, "[t]his uncertainty . . . is the result of the failure of the insured to comply with the policy, and it should not be permitted to use that uncertainty as a weapon against the insurer."[18] Uncertainty does not, however, relieve the insurer of the burden to "show the precise manner in which its interests have suffered."[19] Further, the insurer must prove more than "prejudice that is only theoretical or presumed merely from the length of the delay."[20]

---

[15] See Hernandez, 875 S.W.2d at 693 (distinguishing between when an insurer is "deprived of the contract's expected benefit" and when any "extinguished . . . right has no value," the latter constituting lack of prejudice); id. (citing RESTATEMENT (SECOND) OF CONTRACTS § 241(a) (1981)) ("[C]ourts will consider, among other things, the extent to which the nonbreaching party will be deprived of the benefit that it could have reasonably anticipated from full performance.").

[16] Coastal Ref. & Mktg., 218 S.W.3d at 288, 296; 14 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 199:139 (3d ed. 2008); see Fid. & Cas. Co. of N.Y. v. Tex. E. Transmission Corp. (In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig.), 15 F.3d 1249, 1254 (3d Cir. 1994) (citing Members Ins. Co. v. Branscum, 803 S.W.2d 462, 466 (Tex. App. — Dallas 1991, no writ)) (determining that Texas courts would require a material adverse change in position).

[17] Am. Ins. Co. v. Fairchild Indus., Inc., 56 F.3d 435, 440 (2d Cir. 1995).

[18] Id. at 440–41.

[19] 13 RUSS & SEGALLA, COUCH ON INSURANCE § 193:29 ("[A]n insurer must show the precise manner in which its interests have suffered, meaning that an insurer must show not merely the possibility of prejudice, but, rather, that there was a substantial likelihood of avoiding or minimizing the covered loss . . . .") (emphasis added); see Friedland v. Travelers Indem. Co., 105 P.3d 639, 648–49 n.5 (Colo. 2005) (en banc) (quoting approvingly COUCH ON INSURANCE); see also Clarendon Nat'l Ins. Co. v. FFE Transp. Servs., Inc., 176 F. App'x 559, 562 (5th Cir. 2006) (per curiam) (unpublished) ("[The insurer] is required to show the precise manner in which its interests have suffered.").

[20] Coastal Ref. & Mktg., 218 S.W.3d at 288.

When inquiring into whether an insurer lost a valuable right or benefit, a court should keep in mind the purpose of timely notice requirements: "to enable an insurer to investigate the circumstances of an accident while the matter is fresh in the minds of the witnesses so that it may adequately prepare to adjust or defend any claims that may be then or thereafter asserted against persons covered by its policy."[21]

Although we know that (1) to mount a successful untimely notice defense, an insurer must establish prejudice and (2) prejudice is the loss of a valuable right or benefit, Texas precedent provides limited practical assistance regarding what constitutes a showing of prejudice sufficient to relieve an insurer of liability.[22] When given the opportunity, however, Texas courts have "definitively and narrowly defined" sufficient prejudice.[23] In our instant inquiry, we ask how the Texas Supreme Court would rule on the issue of sufficient prejudice.[24] In seeking our answer, we may look to the rules of other jurisdictions and to the decisions of Texas intermediate appellate courts.[25]

---

[21] Employers Cas. Co. v. Glens Falls Ins. Co., 484 S.W.2d 570, 575 (Tex. 1972).

[22] St. Paul Guardian Ins. Co. v. Centrum G.S. Ltd., 383 F. Supp. 2d 891, 902 (N.D. Tex. 2003) (citing Filley v. Ohio Cas. Ins. Co., 805 S.W.2d 844, 847 (Tex. App. — Corpus Christi 1991, writ denied)) ("[L]ittle authority exists to explain what constitutes sufficient prejudice . . . ."); see Coastal Ref. & Mktg., 218 S.W.3d at 287 ("In determining whether an insurer has been prejudiced, . . . the existing case law offers limited guidance.").

[23] St. Paul Guardian, 383 F. Supp. 2d at 902–03 (collecting Texas cases and determining that courts "have been quite specific and definitive in holding that prejudice occurs" under certain circumstances such as when the insurer does not receive notice until (1) trial is fast approaching, (2) default judgment has been entered, or (3) after trial and subsequent entry of judgment); see also Coastal Ref. & Mktg., 218 S.W.3d at 287 ("Some authorities suggest that default judgment is the only circumstance constituting prejudice.").

[24] Hanson Prod. Co. v. Ams. Ins. Co., 108 F.3d 627, 629 (5th Cir. 1997).

[25] See Lifemark Hosps., Inc. v. Liljeberg Enters., Inc. (In re Liljeberg Enters., Inc.), 304 F.3d 410, 424 (5th Cir. 2002) (looking to intermediate state court decisions); Hanson, 108 F.3d at 631 (looking to other jurisdictions).

## 2. SRS's "Shock-Loss Investigation"

As the district court explained, "a summary of [SRS's] arguments is that SRS would have liked to have had the opportunity on the day of the accident at the accident site to have interviewed witnesses on its own and attempt to get admissions of liability or indemnity from entities or individuals who were not its insureds" and that "SRS did not have the opportunity to conduct and employ its normal 'shock loss' investigative procedures and techniques on the day (o[r] in some circumstances within hours or minutes after) the accident occurred." In SRS's view, OSHA's and the local authorities' investigations do not alleviate the alleged prejudice because only SRS's specialized "shock-loss investigation" inquires into essential issues and immediately takes post-accident measures in an effort to decrease liability. Relying on, inter alia, two declarations — one from Robert Moore, an attorney with vast crane-investigation experience who had helped design SRS's shock-loss program and another from Sarah Breitmeyer, an SRS risk management coordinator[26] — SRS advances at least five reasons in support of this view: (1) an SRS investigation "is oriented entirely towards the on-the-spot determination of indemnity and liability responsibilities and focuses on the immediate resolution of any fact issues" in a manner distinct from that of the three investigating entities which had no interest in protecting Trumble from liability; (2) an SRS investigation attempts to present facts to the general contractor in an effort to have it accept responsibility for the loss, thereby mitigating the loss to its subcontractor policy-holder; (3) SRS lost the opportunity to attempt to persuade the contractor, Deerwood, to defend and indemnify Trumble; (4) as part of its investigation, SRS

---

[26] On appeal, SRS asserts that the district court erred by striking four portions of Robert Moore's declaration as "[c]onclusory allegations, speculation, unsubstantiated assertions, and improbable inferences." See Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir. 1994) (indicating that such material is not competent summary judgment evidence). Upon careful review of the record, it is clear that our decision as to prejudice would not differ with or without the excluded items. We thus have no need to reach this issue.

would have questioned Trumble's crane operator in hopes of emphasizing that he could not have seen the overhead power lines and was wholly reliant on Deerwood signalmen to prevent the crane from contacting the power lines — a line of questioning that the other investigating entities did not pursue; and (5) SRS would have prevented the crane from being moved so that an accident reenactment could have been performed.

Although failure to receive notice timely deprived SRS of its desired shock-loss investigation, SRS had an opportunity to rely on and collaborate with the three other investigating entities and also had the ability to complete its own discovery and investigation soon after Tankersley initiated legal proceedings and well before the trial date. Additionally, at deposition, Timothy Hillegonds, an SRS risk management coordinator testified: "I don't know what I would have been able to learn had I been able to get my investigation under way" immediately. Hillegonds also conceded that it was possible that the investigation would not "have generated any additional information that would have been helpful to SRS or Trumble."

3.    SRS Failed to Create a Material Fact Issue as to Prejudice

Even when we construe all facts and draw all inferences in favor of SRS standing in the shoes of Trumble, we are satisfied that SRS has failed to create a genuine issue of material fact that would have enabled it to withstand the K&S Defendants' motion for summary judgment. We first evaluate SRS's assertion that three relevant cases — (1) our decision in Motiva Enterprises, LLC v. St. Paul Fire & Marine Insurance Co.;[27] (2) our unpublished decision in Clarendon National Insurance Co. v. FFE Transportation Services, Inc.;[28] and (3)

---

[27] 445 F.3d 381 (5th Cir. 2006).

[28] 176 F. App'x 559 (5th Cir. 2006) (per curiam) (unpublished).

9

the Texas Court of Appeals decision in Blanton v. Vesta Lloyds Insurance Co.[29] — support a holding in its favor. Rejecting this contention, we then proceed by explaining that, based on persuasive authority, the district court's decision to grant summary judgment was correct.

Our decisions in Motiva and Clarendon are distinguishable from the instant case. Unlike the instant case, they involved exclusions from settlement. The insurance policy in Motiva contained a consent-to-settle provision that required the insurer's prior consent to any settlements that it would be asked to fund.[30] After a refinery explosion, the policyholder reached a settlement in the underlying litigation without first seeking the insurer's consent.[31] We concluded that "[w]hen . . . the insurer is not consulted about the settlement, the settlement is not tendered to it[,] and the insurer has no opportunity to participate in or consent to the ultimate settlement decision, . . . the insurer is prejudiced as a matter of law."[32] This result is required in settlement-exclusion cases because "[a]n insurer's right to participate in the settlement process is an essential prerequisite to its obligation to pay a settlement."[33] Depriving the insurer of this right constitutes a material breach, or prejudice.[34]

In Clarendon, a policyholder waited for over four years to give its insurer notice of an accident.[35] By that time, a jury had rendered a verdict of $1.1 million against the insured party who had previously rejected a pre-trial

---

[29] 185 S.W.3d 607 (Tex. App. — Dallas 2006, no pet.).

[30] 445 F.3d at 383.

[31] Id. at 384.

[32] Id. at 386.

[33] Id.

[34] Id.

[35] 176 F. App'x at 560.

settlement offer of $700,000.[36] We held that the insurer had shown actual prejudice as a matter of law — that, pursuant to Motiva, demonstrating loss of a valuable settlement right constituted sufficient prejudice.[37]

Even though Motiva and Clarendon offer examples of situations when an insurance company suffers prejudice, they do not contradict a determination of no prejudice in the instant case. SRS offers no authority for the proposition that the ability to investigate an occurrence when and how it would like deprives it of an essential benefit of the bargain of its insurance contract in the same manner as exclusion from settlement, a more tangible and quantifiable loss.[38]

In Blanton, the trial court granted summary judgment in favor of an insurer, holding that it had conclusively established prejudice from untimely notice.[39] In that case, appellant Blanton leased his property to an individual, who on many occasions complained that the roof leaked, allegedly causing significant water damage.[40] For more than two years, Blanton neglected to notify his insurer of these complaints.[41] The lessee eventually sued Blanton, asserting causes of action based on Blanton's representations of the roof's condition. Only then — six weeks after he was served with the lessee's petition

---

[36] Id.

[37] Id. at 561–62 (citing Motiva, 445 F.3d at 383).

[38] See Md. Cas. Co. v. Am. Home Assurance Co., --- S.W.3d ---, 2008 WL 4530698, at *8 (Tex. App. — Houston [1st Dist.] 2008, no pet.) (stating that a late-notice case involves a different inquiry than that used in cases where notice is "wholly lacking" such as when notice is provided only after a claim has settled); Coastal Ref. & Mktg., Inc. v. U.S. Fid. & Guar. Co., 218 S.W.3d 279, 291–92 (Tex. App. — Houston [14th Dist.] 2007, pet. denied) (distinguishing possible prejudice in a late-notice case from the prejudice in Motiva and Clarendon that arose from settlement exclusion).

[39] Blanton v. Vesta Lloyds Ins. Co., 185 S.W.3d 607, 609–10 (Tex. App. — Dallas 2006, no pet.).

[40] Id. at 612.

[41] Id. at 613.

— did Blanton forward notice to the insurer.[42] Relying on an affidavit from the insurer's litigation specialist, the court found that the insurer suffered prejudice as a matter of law.[43] The litigation specialist averred that the insurer's "standard procedure was to record and promptly investigate complaints and occurrences" and that it "would have followed this procedure and investigated the matter" if it had received timely notice.[44] Further, the specialist's affidavit stated that delay prevented the insurer from urging Blanton to correct the premises defects, action that could have avoided the underlying litigation.[45] Blanton asserted that (1) the insurer had ample opportunity to conduct discovery and defend against the lessee's suit, and (2) the litigation specialist's statements were self-serving, conclusional, and speculative.[46] The court rejected both of these arguments and held that prejudice may arise from inability to investigate, not just from inability to prepare for trial.[47]

Although similarities exist between Blanton and the instant case, they are distinguishable. First, Blanton involved a chronic problem that presumably could have been resolved prior to the lessee's decision to sue if only the insurer had received notice of the lessee's complaints. In contrast, even immediate notice of the accident to SRS would not have prevented Tankersley's death, the immediate result of an unexpected fatal accident. Second, Blanton withheld notice for over two years — as he continued to receive complaints from his lessee

---

[42] Id. at 609.

[43] Id. at 613 (citing Employers Cas. Co. v. Glens Falls Ins. Co., 484 S.W.2d 570, 575 (Tex. 1972) (discussing prejudice arising from inability to investigate)).

[44] Id. at 612.

[45] Id. at 612–13.

[46] Id. at 615.

[47] Id.

— and no other entity had performed a timely investigation. In contrast, the delay here was only three months and SRS had access to three contemporaneous accident investigations. These distinctions demonstrate that Blanton does not provide support to SRS. None of SRS's three cited cases instruct that inability to conduct its shock-loss investigation creates a genuine issue of material fact as to prejudice.[48]

In deciding the instant case, we have no occasion to speculate how Texas courts might one day define the contours of what constitutes a showing of sufficient prejudice. Instead, we are persuaded by the straight-forward proposition that an insurer must offer "'more than the mere fact that it cannot employ its normal procedures in investigating and evaluating the claim.'"[49] This rule is only an extension of the general rule that "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a

---

[48] SRS did not cite Renner v. State Farm Mutual Auto Insurance Co., 392 F.2d 666 (5th Cir. 1968). There, we said that the district court did not clearly err in finding actual prejudice when delayed notice of an automobile accident deprived the insurer of the ability (1) to photograph the automobiles, (2) to learn about the severity of the collision's impact, (3) to discuss settlement as soon as possible — before the parties had a chance to obtain counsel — and (4) to interview one of the injured persons who died nineteen days after the accident. Id. at 666–68. In the instant case, any Renner-type prejudice was alleviated by SRS's access to the investigation materials from the three other entities, investigations in which the main "drawback" was that the information was objective rather than obtained in pursuit of a goal to limit liability. Additionally, SRS does not point to specific identifiable harm analogous to the death of one of the injured parties between the time when the insured should have provided notice and when it did. The instant case is thus distinguishable from Renner as any lost opportunity here is more attenuated from material prejudice than were those opportunities lost in Renner.

[49] Transportes Ferreos de Venezuela II CA v. NKK Corp., 239 F.3d 555, 561 (3d Cir. 2001) (quoting Kitchnefsky v. Nat'l Rent-A-Fence of Am., Inc., 88 F. Supp. 2d 360, 368 (D.N.J. 2000)). We are aware that the Third Circuit's NKK Corp. decision interpreted New Jersey law, which requires that the insurer show that it suffered appreciable prejudice, see id., a burden that may be stricter than the requisite Texas showing. Nevertheless, the Third Circuit's statement that we quote approvingly was made in the context of the uncontroversial proposition that "mere conjecture or suspicions may not form the basis for establishing appreciable prejudice." Id. That "the mere fact that [an insurer] cannot employ its normal procedures" constitutes an insufficient prejudice showing holds true irrespective of whether the proper standard is appreciable prejudice or some other degree of prejudice.

scintilla of evidence.'"[50]  Evidence of an inability to investigate when and in the manner that an insurer would have liked merely creates the possibility that prejudice could occur.  Yet, inability to investigate — even if that investigation involves specialized techniques such as shock-loss — does not in itself constitute material prejudice.  Without more specific evidence regarding the prejudice that arose from the insurer's inability to investigate, courts are powerless to bridge the gap between the creation of an environment in which prejudice could occur and the requisite prejudice showing.

In the instant case, the following facts are together dispositive:  (1) SRS had access to extensive investigations performed by three other entities; (2) SRS has pointed to no significant deficiencies in those investigations other than that they were presumably objective rather than aimed at decreasing liability; (3) SRS received notice in the relatively short time of three months after the accident and had sufficient time to conduct discovery, settlement negotiations, and independent, albeit delayed, investigation; (4) at his deposition, SRS risk coordinator Timothy Hillegonds was unable to offer a clear indication of how a shock-loss investigation would have improved on the existing investigation information, i.e., how SRS was prejudiced; and (5) SRS presented evidence that delayed notice deprived it only of that which was overly attenuated from demonstrating actual prejudice — lost opportunities to engage in early settlement talks, to attempt to persuade others to accept responsibility, and to perform its own investigation immediately.  These facts are inadequate to defeat the K&S Defendants' motion for summary judgment.[51]

---

[50]  Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir. 2007).

[51]  SRS also argues that the district court erred in alternatively granting summary judgment on the basis of lack of damages.  As we affirm summary judgment on the basis of lack of prejudice, we do not reach the issue of the district court's alternative holding.  See BMG Music v. Martinez, 74 F.3d 87, 89 (5th Cir. 1996) ("This Court can affirm the district court's decision based on any legally sufficient ground . . . .").

III. CONCLUSION

We affirm the district court's grant of summary judgment in favor of the K&S Defendants because SRS, standing in the shoes of Trumble, did not demonstrate the existence of a genuine issue of material fact whether its untimely receipt of notice of the occurrence caused it material prejudice. AFFIRMED.